IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **Criminal ACTION** |
| ) | |
| v. ) | No. 07-10234-MLB |
| ) | |
| STEPHEN J. SCHNEIDER and LINDA K. ) | |
| SCHNEIDER, a/k/a LINDA ATTERBURY, ) | |
| d/b/a SCHNEDER MEDICAL CLINIC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant Stephen Schneider's motion to quash and compel production (Doc. 62) and the government's motion for clarification and modification of the scheduling order (Doc. 84). The motions have been fully briefed and are ripe for decision.[1] (Docs. 64, 72, 84, 90, 91). Defendant's motion is denied and the government's motion is denied in part and granted in part for the reasons herein.

**I.   Motion to Quash**

Prior to the commencement of this criminal action, Stephen Schneider ("defendant") was named as a defendant in various malpractice suits filed on behalf of past patients. Settlement was reached in some of those cases. On April 7, 2008, pursuant to 18 U.S.C. § 3486, the government served subpoenas on the attorneys who represented the plaintiffs seeking disclosure of the settlement agreements. The government has put forth several reasons for seeking

---

[1] Schneider Medical Clinic also filed a motion to quash the subpoenas issued to the clinic. That motion was denied as moot and stricken on May 9, 2008. (Doc. 93).

the settlement agreements: e.g., it may have to produce the agreements as impeachment evidence (AUSA's April 3, 2008 letter to counsel) and the settlements could be relevant to the credibility of witnesses (presumably, settling plaintiffs) who may testify at trial. (Doc. 72). Defendant has filed a motion to quash and compel production, asserting: 1) the government has improperly used its subpoena power; 2) the settlement agreements are not relevant; 3) enforcement of the subpoenas would violate public policy; and 4) the government must produce all subpoenas to defendant.

18 U.S.C. § 3486 reads as follows:

> (a) Authorization.--(1)(A) In any investigation relating of--
>
> (i)(I) a Federal health care offense [the Attorney General] . . .
>
> may issue in writing and cause to be served a subpoena requiring the production and testimony described in subparagraph (B).
>
> (B) Except as provided in subparagraph (C), a subpoena issued under subparagraph (A) may require--
> (i) the production of any records or other things relevant to the investigation; and
> (ii) testimony by the custodian of the things required to be produced concerning the production and authenticity of those things.

A defendant does not have standing to object to an administrative subpoena issued under section 3486 unless "he could demonstrate that he had a legitimate expectation of privacy attaching to the records obtained." United States v. Phibbs, 999 F.2d 1053, 1077-78 (6th Cir. 1993)(citing United States v. Salvucci, 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed.2d 619 (1980) and Katz v. United States, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed.2d 576 (1967)). In this case, the court assumes that the settlement agreements are accessible only to the parties and

their attorneys and that they also contain confidentiality clauses.[2] The court finds that defendant has a legitimate expectation of privacy in the settlement agreements and therefore has standing to object to the subpoenas.

Turning to defendant's contentions, he argues that the government has abused its subpoena powers by issuing the administrative subpoenas, citing the four-part test in Doe v. United States, 253 F.3d 256 (6th Cir. 2001). Defendant's arguments are not persuasive. Indeed, it is hard to imagine how defendant can believe that Doe supports his position, given Doe's very expansive determination of materials subject to subpoena pursuant to section 3486.

The subpoenas in this case were issued and served after defendant's lawyer in one or more of the civil cases took it upon himself to instruct lawyers representing plaintiffs "Do not produce the settlement agreements or information regarding the settlements to the U.S. Attorney." (Chris Cole e-mail of April 4, 2008). Defendant asserts that the government has "misrepresented" the purpose of the subpoenas because the AUSA has used different terminology to describe the reasons for seeking the settlement agreements. This assertion is without legal merit. As the government has pointed out in its response, the materials sought are authorized by section 3486, which defendant does not really dispute. Pursuant to the statute, the government can issue a subpoena "[i]n any investigation relating to any act or activity involving a Federal health care offense". Doe, 253 F.3d at 42 (quoting former version of section 3486). The

---

[2] The court has not been provided with an agreement or the relevant confidentiality language.

subpoenas only seek production of the settlement agreements entered in the civil cases accusing defendant of medical malpractice based on his activities at the clinic. The government has charged defendant with numerous federal health care offenses pertaining to these activities. Even though the indictment has been returned, a continuing investigation into crimes through the use of an administrative subpoena is allowed. See United States v. Phibbs, 999 F.2d 1053, 1077. Therefore, the subpoenas issued in this case are limited to the investigation of health care offenses as allowed by section 3486.

Defendant's next assertion -- that the settlement agreements are "not relevant" despite the reasons given by the government -- borders on the frivolous. For example, in response to the government's position that the settlement agreements may be relevant for purposes of impeachment, defendant offers to stipulate that he will not raise claims that the government has violated its obligations under Brady, Jencks or Rule 16 by failing to disclose the agreements. Defendant's offer has no bearing on whether the settlement agreements are relevant and, of course, the government's disclosure obligations are independent of any offer not to object to the government's failure to comply. "The relevancy of information sought by administrative subpoenas is understood to be quite broad. If the material requested 'touches a matter under investigation,' then relevancy is established." Martin v. Gard, 811 F. Supp. 616, 621 (D. Kan. 1993).[3]

---

[3] "[T]he language of § 3486 indicates that the question of an administrative subpoena's relevance is not a question of evidentiary relevance, but rather is simply a question of whether the documents requested pursuant to the subpoena are relevant to the health care

Defendant argues that disclosure of the agreements will violate public policy, relying on several Second Circuit decisions beginning with Martindell v. Int'l Tel. and Tel. Corp., 594 F.2d 291 (2d Cir. 1979). Martindell deals with a government request for information subject to protective orders issued pursuant to Fed. R. Civ. P. 26(c). There is no claim that the settlement agreements are subject to a protective order, so defendant's argument fails for that reason alone. In addition, it is important to note that none of the plaintiffs in the civil actions have moved to quash a subpoena on the basis that it violates the confidentiality clauses. This court has previously determined that a confidentiality clause in a settlement agreement does not shield the agreement from discovery.[4]  Directv, Inc. v. Puccinelli, 224 F.R.D. 677, 684-85 (D. Kan. 2004).

The Tenth Circuit has not yet addressed the issue of an administrative subpoena issued under section 3486, but it has addressed the issuance of administrative subpoenas in general.

> The Fourth Amendment requires only that a subpoena be "sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." City of Seattle, 387 U.S. at 544, 87 S. Ct. 1737; see also Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to "Custodian of Records," 697 F.2d 277, 281 (10th Cir. 1983) (holding a subpoena in a criminal investigation "is not unreasonable under the Fourth Amendment if it: (1) commands the production only of things relevant to the investigation; (2) specifies the items with reasonable particularity; and (3) covers only a reasonable period of time"); United States v. Bailey (In re Subpoena Duces Tecum), 228 F.3d

---

fraud investigation being undertaken." Doe v. United States, 253 F.3d 256, 266 (6th Cir. 2001).

[4] Whether that agreement, or portions thereof, would then be admissible at trial is a question for a later time.

>    341, 347-49 (4th Cir. 2000) (holding probable cause
>    required for warrants but not subpoenas because warrants
>    are "immedia[te] and intrusive[ ]" whereas the subpoenaed
>    party has an opportunity to challenge a subpoena before
>    complying with it).
>
>    That the subpoena was issued administratively with
>    potential criminal ramifications does not change the
>    analysis. In <u>United States v. Smith</u>, 484 F.2d 8, 11 (10th
>    Cir. 1973), we held that an administrative summons issued
>    by the IRS in the initial stages of a tax fraud
>    investigation did not violate the Fourth Amendment when it
>    was issued in good faith and prior to a recommendation for
>    criminal prosecution.

<u>Becker v. Kroll</u>, 494 F.3d 904, 916-17 (10th Cir. 2007).

The court finds that the government's subpoenas seeking the settlement agreements are sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. Defendant's motion to quash the subpoenas is therefore denied. The subpoenas will be complied with immediately.

Finally, defendant requests that the government be compelled to produce all post-indictment <u>subpoenas</u>. Defendant cites Fed. R. Crim. P. 16(a)(1)(E)(1) but no case authority that subpoenas are covered under this section.[5] The motion is denied, as well.

## II.  Motion for Clarification

The government has moved for clarification and modification of the current scheduling order's provision regarding expert witnesses. The government asserts that the portion of the court's order that states "experts will not be permitted to give direct testimony at trial regarding facts and opinions not set forth in their reports" is

---

[5] It might behoove defendant to use more foresight with regard to his demands for discovery. If the court were to order the government to produce its <u>subpoenas</u> pursuant to Rule 16, then the government would be entitled to obtain all <u>subpoenas</u> issued by defendant. Rule 16 (b)(1)(A).

-6-

not authorized by any rule pertaining to experts in a criminal action and therefore that its experts are not required to prepare reports. (Doc. 66).  The government cites <u>United States v. Nacchio</u>, 519 F.3d 1140 (10th Cir. 2008).

<u>Nacchio</u> notes the following differences between expert discovery in a criminal action and a civil action:

> A Rule 16 disclosure must contain only "a written summary of any testimony" and "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C). In contrast, an expert's written report in a civil case must include not only "a complete statement of all opinions the witness will express and the basis and reasons for them," Fed. R. Civ. P. 26(a)(2)(B)(i), and his qualifications, R. 26(a)(2)(B)(iv), but also all of the data or other information considered in forming the opinion, all summary or supporting exhibits, and the compensation he was paid.

<u>Id.</u> at 1152.

The government proposes to divide its experts into at least two classifications: "core" or "primary" experts and witnesses having "other specialized knowledge" such as "numerous physicians, several insurance company employees who reviewed defendants' claims, several individuals from the Coroner's Office, financial analysts, data analysts, and investigatory agents."  The government wants to make the Rule 16 disclosures only of its "core" or "primary" experts on June 30 and defer other "appropriate Rule 16 expert motions" until November 4, 2008, four months prior to the agreed-upon trial date.

The court acknowledges that its use of the term "report" was probably incorrect.  But simply substituting the words "Rule 16 disclosures" for "report" and deleting the objected-to provision will not suffice.  Rule 16 does not distinguish between "primary" or "core" and "other" experts.  Expert witnesses and admission of expert

testimony are defined and governed by Fed. R. Evid. 104(a) and 702-705.  It is up to counsel to decide which of their witnesses will offer expert testimony which comes within the purview of these rules which then must be disclosed pursuant to Fed. R. Crim. P. 16(a)(1)(G) and (b)(1)(C).  According to Nacchio, Rule 16 does not require expert "reports" or "a full explanation of the witness's methodology," but it authorizes the district court to order a party to "make a written proffer in support of admissibility under Rule 702. . ."  519 F.3d at 1152.  Because Rule 702 was amended in 2000 in response to Daubert and Kuhmo Tire, a "written proffer" in support of admissibility would seem to require most, if not all, of the information described in a Fed. R. Civ. P. 26(a)(2)(B)(i) report.

   The indictment was returned in December 2007.  The parties have agreed on a February 2009 trial date, which the court will not extend. The government says that it may have as many as 30 witnesses who may offer some form of opinion testimony.  Defendants have not come forth with a number but have indicated their intention to call expert witnesses.  This presents the possibility of more than 30 Daubert challenges.  The Tenth Circuit has indicated that the "most common method for fulfilling. . . " the district court's "gatekeeping" function is a hearing.  Goebel v. Denver and Rio Grande Western R.R. Co., 215 F.3d 1083, 1087 (10th Cir. 2000).  In Nacchio, the court reiterated its requirement for "specific finding on the record" when testimony is admitted under Daubert. For some reason, the Nacchio panel declined to decide whether similar findings are required when testimony is excluded but this judge has been around the block enough times to know what likely would happen on appeal should he exclude

testimony without "specific findings." The possibility of having to conduct an unspecified number of <u>Daubert</u> hearings, in addition to the other matters scheduled after November, is unacceptable.

Fed. R. Crim. P. 2 states:

> These rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay.

The Advisory Committe Notes to the 2002 Amendments to Rule 2 observe, in pertinent part: "The words 'are intended' have been changed to read 'are to be interpreted.' The Committee believed that that was the original intent of the drafters and more accurately reflects the purpose of the rules." The Supreme Court noted in <u>United States v. Vonn</u>, 535 U.S. 55, 64, n. 6, 122 S. Ct. 1043, 1049 (2002) that "[i]n the absence of a clear legislative mandate, the Advisory Committee Notes provide a reliable source of insight into the meaning of a rule, especially when, as here, the rule was enacted precisely as the Advisory Committee proposed."

Fed. R. Evid. 102 contains similar language:

> Purpose and Construction
>
> These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.

Read together, Rule 2 and Rule 102 allow this court sufficient discretion to fashion a procedure which will allow for pre-trial disclosure of expert opinions adequate to prevent, as much as possible, claims during trial of surprise, "sandbagging" and "being put in the trick bag" by counsel and/or witnesses.

Accordingly, the Scheduling Order is modified, as follows:

1. Expert Testimony

    b. By June 30, 2008, the government must make its Rule 16 disclosures.

    c. By July 31, 2008 (<u>not</u> August 29), defendants must make their Rule 16 disclosures.

    d. By August 29, 2008, all parties shall file requests for an order requiring an opposing party to "make a written proffer in support of admissibility under Rule 702" as permitted by <u>Nacchio</u>.

    e. Written proffers ordered by the court shall be provided to opposing counsel and the court by September 19, 2008.[6]

2. Motions

    b. <u>Daubert</u> motions based upon the written proffers must be filed by October 3, 2008. Hearings will be scheduled as promptly as possible thereafter. <u>Important</u>: costs and expenses of witnesses appearing at <u>Daubert</u> hearings will be the responsibility of the party requesting the hearing and arrangements for payment must be made prior to the hearing. Any witness who, after a <u>Daubert</u> hearing, is permitted to testify must limit his or her testimony at trial to that found by the court to satisfy <u>Daubert</u> standards. Fed. R. Crim. P. 2.

**III. Conclusion**

The government's motion for modification of the scheduling order is granted in part and denied in part. (Doc. 84). Defendant's motion to quash and compel is denied. (Doc. 62).

---

[6] Counsel are directed to <u>United States v. Adams</u>, 271 F.3d 1236 (10th Cir. 2001), for its discussion regarding proffers. Proffers must be sufficient to permit this court to carry out its "gatekeeping" obligations.

IT IS SO ORDERED.

Dated this   22nd   day of May 2008, at Wichita, Kansas.

                                                s/ Monti Belot
                                                Monti L. Belot
                                                UNITED STATES DISTRICT JUDGE