**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,      ) | |
|            ) | |
|          Plaintiff,    ) | **Criminal ACTION** |
|            ) | |
| v.            ) | No. 07-10234-MLB |
|            ) | |
| STEPHEN J. SCHNEIDER and LINDA K. ) | |
| SCHNEIDER, a/k/a LINDA ATTERBURY, ) | |
| d/b/a SCHNEDER MEDICAL CLINIC,   ) | |
|            ) | |
|          Defendant.    ) | |
| _____) | |

## MEMORANDUM AND ORDER

This case comes before the court on defendants' motions to dismiss the indictment. (Docs. 97, 104). The motions have been fully briefed and are ripe for decision. (Docs. 98, 105, 116, 134). Defendants' motions are denied for the reasons herein.

### I. Facts

See the facts set out in the Memorandum and Order of July 15, 2008. (Doc. 154).

### II. Motion to Dismiss on Constitutional Grounds (Docs. 97 and 98)

#### A. Facially Unconstitutional

Defendants assert that both 21 U.S.C. § 841 and 18 U.S.C. § 1347 are facially unconstitutional but they make no argument or cite any authority for the proposition that 18 U.S.C. § 1347 is unconstitutional on its face. Defendants have abandoned their facial unconstitutionality claim as to section 1347.

21 U.S.C. § 841 reads as follows:

(a) Unlawful acts

Except as authorized by this subchapter, it shall be

unlawful for any person knowingly or intentionally--

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

"There are two quite different ways in which a statute or ordinance may be considered invalid 'on its face' - either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'" Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 796, 104 S. Ct. 2118, 2124 (1984).

Defendants argue that section 841 is facially unconstitutional because it infringes on both their First Amendment rights as practitioners and on the rights of their patients. (Doc. 98 at 11-12). The court fails to understand defendants' cryptic, conclusory statements regarding how section 841 would infringe on doctors' or patients' First Amendment rights. Section 841 has been reviewed by the United States Supreme Court and has not been challenged as facially unconstitutional. See Gonzalez v. Oregon, 546 U.S. 243, 126 S. Ct. 904, 163 L. Ed.2d (2006); United States v. Moore, 423 U.S. 122, 96 S. Ct. 335, 46 L. Ed.2d 333 (1975). The statute does not restrict or prohibit doctors' rights to prescribe drugs nor does it prohibit patients from obtaining those drugs when they consult a doctor. It only proscribes conduct which is outside of the scope of medical practice or the prescribing of controlled substances for other than a legitimate medical purpose. Gonzalez, 546 U.S. 243, 257.

-2-

Surely defendants do not claim that they have a right to prescribe drugs for illegitimate medical purposes!   Section 841 is facially constitutional.

### B.   Unconstitutional As Applied

### i.   21 U.S.C. § 841

Defendants devote the bulk of their memorandum to an argument that section 841 is unconstitutional as applied because it fails to give proper notice and lacks meaningful enforcement standards, a "void for vagueness" challenge.[1]   "The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." United States v. Gaudreau, 860 F.2d 357, 359 (10th Cir. 1988).   In evaluating a statute, the court must examine it in light of the conduct with which defendants are charged.   Id. (citing Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497, 102 S. Ct. 1186, 1193, 71 L. Ed.2d 362 (1982); United States v. Powell, 423 U.S. 87, 92-93, 96 S. Ct. 316, 319-20, 46 L. Ed.2d 228 (1975); United States v. Mazurie, 419 U.S. 544, 550, 95 S. Ct. 710,

---

[1]   Defendants attach massive exhibits to both motions consisting of deposition transcripts, newspaper articles, correspondence between counsel in civil cases involving Stephen Schneider and reference materials on pain management.   The court does not doubt that management of chronic pain with drugs can constitute legitimate medical practice, but that has no bearing on the statute's constitutionality.   Similarly, that there are on-going medical negligence suits against Stephen Schneider and that a plaintiff's lawyer in some of the suits is supposedly "cooperating" with the prosecution in this case has no demonstrable relevance to whether statutes are constitutional.   The court does read the materials submitted by the parties and it does not enhance a party's position when the court must review submissions which have nothing to do with the issues at hand.

714 (1975); <u>United States v. National Dairy Products Corp.</u>, 372 U.S. 29, 32-33, 36, 83 S. Ct. 594, 599-600 (1963); <u>Robinson v. United States</u>, 324 U.S. 282, 285-86, 65 S. Ct. 666, 668-69, 89 L. Ed. 944 (1945); <u>United States v. Hines</u>, 696 F.2d 722, 727 (10th Cir. 1982) (Oklahoma commercial gambling statute upheld against vagueness challenge and "appellants lack[ed] standing to attack the statute on the basis that it might be unconstitutionally vague as applied to the conduct of others")).

Section 841 prohibits the unlawful distribution of controlled substances.  A physician can be found criminally liable under section 841 when his "conduct exceed[s] the bounds of 'professional practice'" and the controlled substances are not prescribed for a legitimate purpose.  <u>United States v. Moore</u>, 423 U.S. 122, 142, 96 S. Ct. 335, 46 L. Ed.2d 333 (1975); <u>Gonzalez</u>, 546 U.S. 243, 257.  Federal courts' decisions after <u>Moore</u> have attempted to determine what constitutes the course of practice and a legitimate medical purpose.  The Tenth Circuit has consistently held that "[e]xpert medical testimony is, of course, admissible when it bears on the question of whether a doctor in prescribing a controlled substance is acting for a legitimate medical purpose." <u>United States v. Jamieson</u>, 806 F.2d 949, 951 (10th Cir. 1986)(citing <u>United States v. Bartee</u>, 479 F.2d 484 (10th Cir. 1973)); <u>see also</u> <u>United States v. Varma</u>, 691 F.2d 460, 464 (10th Cir. 1982) (citing to evidence that a physician failed to conduct proper patient screenings and physical examinations); <u>United States v. Celio</u>, No. 05-1330, 230 Fed. Appx. 818, 823-24 (10th Cir. Apr. 30, 2007)("The prescribing of a controlled substance by a physician is 'authorized' only when the physician acts with a legitimate medical purpose and in

-4-

the usual course of professional practice")(citing <u>United States v. Nelson</u>, 383 F.3d 1227, 1233 (10th Cir. 2004)).[2]

Courts have rejected challenges to section 841. In <u>United States v. Collier</u>, 478 F.2d 268, 271-72 (5th Cir. 1973), the Fifth Circuit rejected a void for vagueness challenge to section 841, stating that the statute was created to prosecute doctors who act as drug pushers and that the concept of professional practice depended on the facts of each case. It found that the language is not vague because each doctor must routinely make a decision as to "whether a patient's condition is such that a certain drug should be prescribed." <u>Id.</u> at 272.

While the Fifth Circuit was faced with a challenge to the phrase "usual course of professional practice" instead of "legitimate medical purpose," the Tenth Circuit recently discussed how the two terms may be "merely two ways of saying the same thing." <u>Nelson</u>, 383 F.3d at 1227. In its discussion, the court cited <u>United States v. Kirk</u>, 584 F.2d 773, 784 (6th Cir. 1978), for its observation that "there is no difference in the meanings of the statutory phrase, 'In the usual course of professional practice' and the regulations' phrase, 'legitimate medical purpose'". This court agrees that it would be rare, if not impossible, to describe a situation in which a doctor would be acting in the usual course of professional practice but would

_____

[2] "In order to obtain a conviction under 21 U.S.C. s 841(a)(1) against a physician, the prosecution must show:
(1) That defendant distributed a controlled substance;
(2) That he acted intentionally or knowingly; and
(3) That defendant prescribed the drug without a legitimate medical purpose and outside the usual course of professional practice." <u>United States v. Varma</u>, 691 F.2d at 462.

fail to prescribe a drug for a legitimate medical purpose. <u>Kirk</u> also cited <u>Doe v. Bolton</u>, 410 U.S. 179, 93 S. Ct. 739, 35 L. Ed.2d 201 (1973), to support the conclusion that section 841 was not unconstitutionally vague. In <u>Doe</u>, the doctor argued that the language in an abortion statute, which provided that it was illegal for a doctor to perform an abortion except "based upon his best clinical judgment that an abortion is necessary," was unconstitutionally vague because the word "necessary" was undefined. The Supreme Court disagreed and found the language not vague because "whether . . . 'an abortion is necessary,' is a professional judgment that the Georgia physician will be called upon to make routinely." <u>Collier</u>, 478 F.2d at 272 (quoting <u>Doe</u>, 410 U.S. at 191).

Nonetheless, defendants contend that the term "legitimate medical purpose" is vague and therefore they have not been put on notice as to what conduct is prohibited.[3] Defendants cite <u>Colautti v. Franklin</u>, 439 U.S. 379, 99 S. Ct. 675 (1979), a case in which the Supreme Court struck down an abortion statute because the language was ambiguous. In <u>Colautti</u>, the statute lacked a scienter requirement in the provision which directed the doctor to determine whether a fetus was viable, a term which the court also found ambiguous.

Section 841 does require scienter. In <u>Celio</u>, the Tenth Circuit held that while the statute does not require that a defendant act knowingly in issuing the prescription without a legitimate medical

---

[3] "Legitimate medical purpose" is not defined in the statute. 21 C.F.R. § 1306.04(a) states, in pertinent part, "A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."

-6-

purpose, it does require the knowing act of issuing the prescription. 230 Fed. Appx. at 826.  The court stressed that a defendant could not be convicted under the statute "if [the jury] found he merely made an honest effort to treat his patients in compliance with an acceptable standard of medical practice."

Defendants' arguments regarding Gonzales are not persuasive, if for no other reason, because it is factually distinguishable. Gonzales did not disturb prior case law on the issue of legitimate medical purpose but rather was based on the application of an interpretive rule promulgated by the Attorney General dealing with the prescription of drugs to assist suicide.  Gonzales reaffirmed its decision in Moore by recognizing that it has previously considered whether the CSA regulates medical practice when a doctor is essentially acting as a drug pusher.  Id. at 269 (citing Moore, 423 U.S. at 143, 96 S. Ct. 335).[4]  Gonzales did not involve a prosecution under section 841 and the constitutionality of the Controlled Substances Act, of which section 841 is a part, was not at issue and was not discussed. Defendants' attempt to make it applicable to this case is unavailing.

Finally, defendants argue that section 841 lacks meaningful enforcement standards.  Defendants make arguments about medical judgments and pain management treatment.  These are trial issues.

_____

[4] The Supreme Court recited the facts from Moore as follows:
"[H]e gave inadequate physical examinations or none at all. He ignored the results of the tests he did make. He did not give methadone at the clinic and took no precautions against its misuse and diversion. He did not regulate the dosage at all, prescribing as much and as frequently as the patient demanded. He did not charge for medical services rendered, but graduated his fee according to the number of tablets desired. In practical effect, he acted as a large-scale "pusher" not as a physician." 423 U.S. 142-43.

-7-

Defendants' motion to dismiss section 841 as unconstitutionally vague is denied.

**ii.     18 U.S.C. § 1347**

Defendants argue that section 1347 is unconstitutionally applied by the indictment because of its reliance of the CPT coding system. Defendants assert that violations of coding are not violations of the law.

> Section 1347 reads as follows:
>
> Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice--
>
> (1) to defraud any health care benefit program; or
>
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
>
> in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1347.

Defendants are charged with defrauding certain health care benefit programs in order to receive payments for services that were not rendered.  Defendants are not charged with violating CPT codes. The government has alleged that defendants have defrauded the benefit programs by upcoding, i.e. billing for services not rendered.   In order to prove that defendants have committed fraud under the statute, the government must introduce evidence that defendants' intentionally billed for services not rendered.  The court fails to see how section 1347 is unconstitutionally applied by the indictment.

**III. Motion to Dismiss under Fed. R. Crim. P. 7(c) (Doc. 104)**

Fed. R. Crim. P. 7(c) provides that the "indictment or

-8-

information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government."

> An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense.  It is generally sufficient that an indictment set forth an offense in the words of the statute itself, as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.  Therefore, where the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges.  We review the sufficiency of an indictment de novo, but a challenge to the indictment is not a vehicle for testing the government's evidence. Rather, an indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true.

United States v. Redcorn, --- F.3d ---, 2008 WL 2332005, *2 (10th Cir. June 9, 2008)(internal citations omitted).

**A. Section 841**

Defendants assert that a violation of section 841 is not alleged in the indictment because the Attorney General does not have the power under the CSA to determine whether a physician acted with a legitimate medical purpose, citing Gonzales.  This is a futile argument which requires no further consideration.

Throughout their repetitive briefing, defendants persist that the government has not sufficiently stated a violation under section 841 because the prosecutor simply disagrees with defendants' medical decisions.  Defendants assert that they prescribed the drugs with a legitimate medical purpose.  These arguments are not suitable for a motion to dismiss.  Should they elect to do so, defendants will have

an adequate opportunity to present evidence that they were acting in good faith.  <u>Celio</u>, 230 Fed. Appx. at 823-24 (citing <u>United States v. Hurwitz</u>, 459 F.3d 463, 477-78 (4th Cir. 2006) (collecting cases setting forth objective good-faith standard)).

Defendants appear to be operating under the misconception that the court will allow the case to proceed to the jury if the government simply presents evidence of malpractice.  Not so.  The government must prove beyond a reasonable doubt that defendants were prescribing drugs for illegitimate medical purposes.  <u>United States v. Bartee</u>, 479 F.2d 484, 489 (10th Cir. 1973); <u>see</u> <u>also</u> <u>United States v. Feingold</u>, 454 F.3d 1001, 1011 (9th Cir. 2006); <u>United States v. Tran Trong Cuong</u>, 18 F.3d 1132, 1137 (4th Cir. 1994) (a criminal conviction "requires more" than a showing of malpractice); <u>United States v. Stump</u>, 735 F.2d 273, 276 (7th Cir. 1984) (the defendant's pattern of prescribing drugs "could not possibly be consistent with legitimate medical treatment"). "A practitioner becomes a criminal not when he is a bad or negligent physician, but when he ceases to be a physician at all."  <u>Feingold</u>, 454 F.3d at 1011.

Defendants also assert that count five fails to give adequate notice.  Count five has adequately alleged the required elements of section 841 by listing the patients who the government believes, and must prove, to whom defendants prescribed medications without a legitimate purpose and alleging the time period in which defendants acted.  Rule 7(c) merely requires a short statement of the charge and does not require the government to disclose evidentiary detail.

Finally, defendants claim that count six does not sufficiently allege a violation of section 841 because prescribing off-label drugs

-10-

has been recognized as an ethical and legitimate medical practice. Count six specifically states that defendants prescribed Actiq, a highly addictive drug, for the treatment of general pain. It also alleges that defendants did this after more than 40 patients showed signs of drug-seeking behavior and therefore that defendants prescribed Actiq without a legitimate medical purpose and outside of the scope of medical practice. The indictment is sufficient.

### B.   18 U.S.C. § 1347

First, defendants rehash their argument that section 1347 is not intended to criminalize medical malpractice and that the inclusion of upcoding violations under HIPAA, which imposes civil liability, but an absence of discussion of violations under section 1347, implies that Congress did not intend to include upcoding as a basis of criminal liability. HIPPA's liability for upcoding is premised on a reckless disregard for truth or deliberate ignorance. 42 U.S.C. §§ 1320a-7a(1)(A), 1320a-7a(i)(7) whereas section 1347 requires proof beyond a reasonable doubt that an individual "knowingly and willfully executes, or attempts to execute, a scheme or artifice to defraud any health care benefit program; or to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services." Obviously, the mental state requirement is that of a criminal nature. The absence of discussion of coding in the statute does not imply that an individual's repeated intentional acts of improperly coding medical services in order to receive payments for services not rendered will

not be subject to criminal liability.   The court finds that the indictment has adequately set forth a claim of health care fraud.

Second, defendants assert that the indictment is defective because it fails to allege that the false statements made by defendants were material.   The government responds that although the words material or materiality are not present, the allegations in the indictment are sufficient and the facts alleged in the indictment "warrant the inference of materiality."   (Doc. 116 at 18).   A materiality requirement is implicitly contained in federal statutes that use the common-law term "defraud."   <u>Neder v. United States</u>, 527 U.S. 1, 22-23, 119 S. Ct. 1827, 144 L. Ed.2d 35 (1999); <u>Carter v. United States</u>, 530 U.S. 255, 266, 120 S. Ct. 2159, 147 L. Ed.2d 203 (2000).   In <u>United States v. Cooper</u>, 283 F. Supp.2d 1215 (D. Kan. 2003), Judge Crow addressed this very issue and determined that an indictment which alleges counts pursuant to section 1347 is not deficient merely because it lacks the term material:

> Contrary to the defendants' interpretation, the Supreme Court in <u>Jones v. United States</u>, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed.2d 311 (1999), did not develop any additional requirements for an indictment to allege the elements of the offense. Rather, the Court relied on the same rule stated sometime ago in <u>Hamling</u> and was more concerned with whether certain statutory language constituted an element of the offense or was a mere sentencing factor. This is not issue here. Nor must the indictment actually use the term, "material," in alleging this element:
>
>> The failure to employ the word "material" in the language of the indictment, however, is not fatal. See United States v. Richards, 204 F.3d 177, 191 (5th Cir. 2000) ("In determining the sufficiency of the indictment, '[t]he law does not compel a ritual of words.' " (quoting United States v. Wilson, 884 F.2d 174, 179 (5th Cir. 1989))). Instead, an allegation of fraud in an indictment will be sufficient so long as "the

> facts alleged in the indictment warrant an
> inference that the false statement is material."
> <u>United States v. McGough</u>, 510 F.2d 598, 602 (5th
> Cir. 1975).

> <u>United States v. Bieganowski</u>, 313 F.3d 264, 285 (5th Cir.
> 2002), cert. denied, 538 U.S. 1014, 123 S. Ct. 1956, 155
> L. Ed.2d 851 (2003). It is enough if the indictment
> contains sufficient factual allegations to encompass the
> concept of materiality. <u>See</u>, <u>e.g.</u>, <u>United States v.
> Fernandez</u>, 282 F.3d 500, 508 (7th Cir.), cert. denied,
> (537 U.S. 1028, 123 S. Ct. 580, 154 L. Ed.2d 442 (2002));
> <u>United States v. Grey</u>, 56 F.3d 1219, 1223 (10th Cir.
> 1995).

The court agrees with Judge Crow and finds that the present indictment sufficiently alleges fraud and those allegations warrant an inference that the false statements were material.

Third, defendants argue that counts 7-9 and 13-17 must be dismissed because health care fraud cannot be based on up-coding and inadequate documents. These charges are based on allegations that defendants intentionally and improperly billed health care providers for services in order to receive payments for services not provided. Such allegations sufficiently allege a violation under section 1347.

Fourth, defendants assert that counts 10-12 must be dismissed because the government has failed to allege a scheme to defraud. While the scheme is not restated in counts 10-12, the government has incorporated all of the prior allegations in those counts. The facts alleged in the indictment are sufficient to allege a scheme to defraud.

Fifth, defendants argue that the health care fraud counts must be dismissed because the indictment fails to allege that defendants acted willfully. The government did not respond to this argument. Willfulness is an essential element of health care fraud. 18 U.S.C.

-13-

§ 1347.  The indictment does not use the term willful.  Failure to include the term "willful" is not fatal to the indictment.  <u>United States v. Dashney</u>, 117 F.3d 1197, 1206 (10th Cir. 1997).  In <u>Dashney</u>, the Tenth Circuit determined that the failure to include the term willful was not fatal because the indictment included a citation to the specific statute which referenced the term willful and the indictment included charges that the defendant acted knowingly, intentionally, and unlawfully, terms which reference willful conduct.

In the indictment, section 1347 is frequently referenced.  The indictment also frequently uses the terms knowingly and illegally.  The indictment also painstakingly lists all of the acts that defendants committed and how they instructed their employees to improperly submit claims to health care providers.  The court finds that the language in the indictment and the references to section 1347 are more than sufficient to apprise defendants that they are being charged with willful conduct.

**IV.   Conclusion**

Defendants' motions to dismiss are denied.  (Docs. 97, 104).


IT IS SO ORDERED.

Dated this ____ day of July 2008, at Wichita, Kansas.


_____

Monti L. Belot

UNITED STATES DISTRICT JUDGE



-14-