# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.  07-10234-02-MLB** |
| ) | |
| **LINDA K. SCHNEIDER, a/k/a,** ) | |
| **LINDA K. ATTERBURY,** ) | |
| **d/b/a SCHNEIDER MEDICAL** ) | |
| **CLINIC** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

## I.      BACKGROUND

Defendant and her husband Stephen Schneider were charged by Indictment

filed December 20, 2007, with multiple counts of conspiracy, unlawful distribution

and dispensing of controlled substances, health care fraud, money laundering and

illegal monetary transactions.  (Doc. 2.)[1]  On December 21, 2007, Defendants

appeared for a detention hearing.  (Doc's 3, 6.)  The Government appeared through

---

[1] On the same day the Indictment was returned in this case, the Government filed a
motion to revoke the probation of Linda Schneider in another case, No. 06-10106-MLB.
(No. 06-10106-MLB, Doc. 32.)  Linda Schneider had pled guilty in that case to one count
of social security fraud, and had been sentenced to two years of probation.  (No. 06-
10106, Doc's 18, 20.)

Tanya Treadway, Assistant United States Attorney.  Defendant Stephen Schneider appeared through appointed counsel Jay Greeno; Defendant Linda Schneider, a/k/a Linda K. Atterbury, appeared through appointed counsel John Rapp.  After hearing proffers and statements of counsel, the Court denied the Government's motion for special conditions of release and ordered both Defendants to be detained pending trial.  (Doc's 10, 11.)

On January 7, 2008, the Government filed an unopposed motion to designate this case as a complex case.  (Doc. 14.)  An Order granting the motion was filed the next day.  (Doc. 15.)  On February 8, 2008, Uzo L. Ohaebosim entered his appearance for Defendant Linda Schneider (Doc. 25), and on February 22, 2008, attorneys Eugene V. Gorokhov and Kevin P. Byers were allowed to appear *pro hac vice* for Defendant Linda Schneider.  (Doc. 31.)

At a hearing on March 3, 2008, Defendants' retained counsel indicated for the first time that they intended to file a motion seeking to reopen the detention hearing as to both Defendants.

A.      Defendants' Motions for Release.

On March 7, 2008, Defendant Linda Schneider filed a motion for release on her own recognizance and/or to set bond pursuant to 18 U.S.C. § 3142, together

with supporting memoranda.  (Doc's 39, 40.)[2] Her husband, Defendant Stephen

Schneider, filed a similar motion.  (Doc. 41.)  The Government filed a response in

opposition to the motions for bond along with supporting exhibits.  (Doc. 45 and

Minute Entry 3/14/2008 re Exhibit 1 to be filed conventionally.)

A hearing was held on the motions on March 14, 2008.  (Doc. 48.)  The

Government appeared at the hearing through counsel Tanya Treadway, Assistant

U.S. Attorney;  Defendant Linda Schneider appeared through retained counsel Uzo

Ohaebosim, and through *pro hac vice* counsel Kevin P. Byers and Eugene V.

Gorokhov.  Defendant Linda Schneider requested in her motion for release that the

probation revocation motion in Case No. 06-10106-01-MLB be consolidated with

the bond hearing in the present case because the evidence in these cases would

overlap.  (Doc. 40 at 13 n.6.)  At the March 14 hearing, the Court inquired if there

was an objection to this consolidation by the Government.  The Government

conceded that some evidence would overlap, but contended that the bond hearing

in the present case should proceed first, and if the Court detained Linda Schneider

in this case, the Government would then withdraw the motion to revoke her

probation in Case No. 06-10106-01-MLB.  The Court, however, did grant

---

[2] Defendant subsequently filed an Errata version of her memorandum (Doc. 43)
which changed only the organization of the memorandum and not the substance.

3

Defendant's request and consolidated the detention hearings in both cases.[3]

At the March 14 hearing, Defendant Linda Schneider called Kerin Schell, a psychologist, as a witness to testify concerning the mental condition of Defendant during her detention.[4]  As part of cross-examination of Schell, counsel for the Government asked about the witness's knowledge of the circumstances leading up to his examination of Linda Schneider.  (Doc. 50 at 24-27) (Sealed.)  Defendants objected and the Government proffered evidence from recordings of telephone calls from the jail.  While the Government had previously filed and/or tendered a CD with numerous recordings of jail telephone calls for the Court's examination,[5] the Government could not recall whether the specific telephone call or calls referenced by the Government's proffer were included in those prior recordings. The Government indicated that it would check and make that tape available.[6]  The Court allowed the Government's cross examination to proceed based upon its

---

[3]  Defendant Linda Schneider reserved her right to have a preliminary hearing on the Government's motion to revoke probation in Case No. 06-10106-MLB.

[4]  A partial transcript of the March 14 hearing which includes Kerin Schell's testimony has been filed with the Clerk.  (Doc. 50) (Sealed).

[5]  The Government also provided that CD to Defendants' counsel as part of the discovery in the case.

[6]  On March 17, 2008, the Government filed a motion to supplement the record with evidence to support its oral proffer made during the March 14 hearing.  (Doc. 46.) Defendants did not file a response or objection and that motion to supplement was subsequently granted by the Court. (Doc. 70 at 36.)

4

proffer.

No other witnesses were called to testify.  After hearing testimony, proffers and arguments of counsel, the Court took under advisement the motions for release on bond  and indicated that it would rule on those matters by means of a written order.  Before the Court could issue its written order, the Government filed a motion for a psychiatric examination of Defendant Linda K. Schneider to determine her ability to assist in the preparation of her defense.  (Doc. 51.) Defendant Linda Schneider responded to that motion.  (Doc. 53.)  The assigned trial judge granted the motion for a psychological examination and evaluation while Defendant Linda Schneider remained in custody (Doc. 56), and directed that the undersigned magistrate judge's ruling on her pending motion for release on bond be "suspended pending defendant's evaluation so that he may consider the results of the evaluation."  (Doc. 56 at 3.)[7]

By Memorandum and Order of April 21, 2008, the undersigned magistrate judge granted in part and denied in part the motion for release by Defendant Stephen J. Schneider and allowed his release on stated conditions.  (Doc. 70.)  In that same Order, the Court took under advisement the motion for release by Linda

---

[7] Defendant appealed that order to the Court of Appeals for the Tenth Circuit. (Doc. 58.)  That appeal is pending as Tenth Circuit Case No. 08-3099.

Schneider pending completion of her psychological examination or further order of the Court.

On May 15, 2008, Judge Belot forwarded to all parties a copy of the report of examination of Defendant Linda Schneider, stated that Defendant was being returned to Kansas, asked that any party who sought a hearing regarding Defendant's competency inform him by May 23, 2008, and directed that the case be returned to the undersigned magistrate judge for decision on whether Defendant would be allowed to be released and if so on what conditions.[8]

B.    The Government's Motion to Supplement the Record.

On May 16, 2008, the Government filed a Motion to Supplement the Record with Regards to Detention and Revocation of Probation as to Defendant Linda Schneider.  (Doc. 96.)  The Government referenced alleged communications between Linda Schneider and another inmate at the Butler County Jail, and the Government noted that if the Court required an evidentiary hearing, the Government was prepared to put on evidence.  (Doc. 96 at 1.)  On May 30, 2008, Defendant Linda Schneider filed her response to the Government's Motion to Supplement the Record.  (Doc. 118.)  Defendant argued that, at a minimum, she

_____

[8] The undersigned magistrate judge understands that no party sought a competency hearing.

should be granted an evidentiary hearing on the issues raised in the Government's motion.  (Doc. 118 at 1.)  The Government did not file a reply.

After considering the arguments of the parties, the Court set an evidentiary hearing on the Government's Motion to Supplement the Record for Thursday, June 19, 2008 at 1:30 p.m.  On June 17, 2008, Defendant Linda Schneider filed an unopposed motion to continue the evidentiary hearing.  (Doc. 132.)  The motion was granted and, after conferring with all counsel concerning scheduling, the Court continued the hearing to July 17, 2008.  (Doc. 133.)

C.    The July 17, 2008 Evidentiary Hearing.

The Government appeared through Assistant U.S. Attorneys Tanya Treadway and Alan Metzger.  Defendant Linda Schneider appeared in person and through counsel Uzo L. Ohaebosim, and *pro hac vice* counsel Kevin P. Byers and Eugene V. Gorokhov.

The Court announced that the evidentiary hearing would be limited to evidence on two issues identified in the Government's Motion to Supplement (Doc. 96): (1) any evidence concerning alleged attempts by Linda Schneider to mislead the Court concerning her mental condition; and (2) any evidence concerning alleged attempts of Linda Schneider to obtain false identification documents for purposes of flight.

7

The Government called one witness:  Stacey Hill.  The Government also moved to admit two exhibits: Government Ex. 1, a letter from Hill to Tanya Treadway dated April 8, 2008; and Government Ex. 2, three Warning and Waiver Forms signed by Hill when she was questioned by various Government agents on April 17, 2008 and June 18, 2008.  Both exhibits were admitted without objection. The Government also proffered specific findings from the psychiatric examination of Linda Schneider.  All of these proffered statements and conclusions were included in the Psychiatric Report which has been filed under seal in this case (Doc. 121) (Sealed), and the parties agree that the Court can take judicial notice of the contents of that report.  Finally, in response to a defense proffer by Mr. Ohaebosim, the Government proffered that all of the law enforcement officers who interviewed Hill would testify that she told the same story each time, and that it was the same story she told in her testimony at the July 17 hearing.

Linda Schneider called two witnesses: Cindy A. Tucker and Destiny Schulze.  Defendant offered three exhibits: Defendant Ex. A, a NCIC report for Stacey Hill, a/k/a Stacy L. Osborn; and Defendant Ex. B, a Disciplinary Report from the Butler County Jail concerning an incident involving Stacey Hill.  Both Defendant Ex. A and B were admitted into evidence without objection, and Defendant's Ex. A was sealed due to the personal information contained in the

exhibit.[9]  Defendant also proffered the testimony of Uzo L. Ohaebosim concerning

his meeting with Stacey Hill in the Butler County Jail on June 17, 2008, and a

listing of specific facts that Hill did not tell Ohaebosim during that interview.

      The short version of the evidentiary hearing is as follows:

A.     At the beginning of Hill's testimony, the Government had her describe in

      detail her extensive criminal history which included forgery and identity

      theft.  Before the hearing, the Government had provided defense counsel

      with Hill's NCIC record along with Hill's letter to the prosecutor and the

      signed waiver forms concerning her prior interviews. Hill testified that she

      decided to contact the U.S. Attorney's office on her own and that the contact

      was not initiated in any way by either the U.S. Attorney's office or by any

      law enforcement officer.  Hill testified that she bunked next to Linda

      Schneider in the women's dormitory at the Butler County Jail, that

      Schneider asked Hill whether a diagnosis of multiple personality disorder or

      bi-polar disorder would "get her off," and inquired about what Schneider

      should tell the jail nurse that would lead to such a diagnosis.  Hill also

---

   [9]  The third exhibit was a 7/14/2008 copy of an internet news report from an
Associated Press writer quoting telephone conversations with Stacy Hill about the
upcoming evidentiary hearing.  The Court refused to consider this exhibit and it was
neither marked nor admitted into evidence.  Government Ex's 1 and 2 and Defendant Ex.
B are included as Attachments to this Memorandum and Order.

testified that Schneider asked Hill if she could obtain identification

documents for Schneider including a social security card and birth

certificate, mentioned a price of $50,000, and gave Hill a piece of paper with

the name and phone number of Schneider's sister Pat Hatcher as the person

to contact.  Hill then testified that Schneider later said that the matter was

"under control" and that Schneider was going to use her sister's

identification.  Hill also testified that Schneider discussed owning a clinic in

California that was run by someone else, another clinic in Romania, and her

vacation property in Mexico, including the fact that there was a

driver/translator in Mexico and when Schneider was in Mexico she could

have a "wild side" that she could not have in the U.S.  Finally, Hill testified

that Schneider had stated that it was best if she remained in jail.

B.    Tucker testified that Hill and Schneider were not in close proximity at the

jail for very long and that Schneider did not talk to other inmates about her

case.  She testified that there was no place in the dormitory to have a private

conversation and that everyone in the room knows everything that happens.

She testified about a disciplinary incident at the jail where Hill was charged

with urinating in Tucker's drinking cup without Tucker's knowledge, and

the fact that Schneider was a witness to this incident.  Tucker testified that

10

Hill was a known snitch and was known in the jail not to be truthful.

Finally, Tucker testified that she overheard a conversation between

Schneider and another inmate where Schneider said that she had decided to

remain in jail to help the cause.[10]

C.      Schulze testified that she first met the Schneiders in December 2007, when

both she and the Schneiders were in a holding cell at the U.S. Courthouse

and later when they were being transported to the Butler County Jail.  She

stated that she warned Linda about talking with any other inmates about her

case because other prisoners would use the information to help themselves.

She specifically warned Linda Schneider that Hill was one such person.

Schulze testified that she only saw Hill approach Schneider one time at the

jail when Hill went over and sat on Schneider's bed and tried to start a

conversation with Schneider.  However, Schulze indicated that this was not

really a conversation because Linda Schneider really didn't say anything, the

talk all came from Hill, and the incident lasted only about 4-5 minutes.

Schulze also testified that there are no areas in the dormitory for private

conversations.  Schulze described Schneider as one of her good friends in

---

[10] A portion of Tucker's testimony was taken in an *in camera* proceeding due to her statements concerning certain personal and health information of other persons.

the jail and that they talked daily.  Schulze testified that Schneider told her about witnessing the urinating-in-the-cup incident between Hill and Tucker, and Schneider wanted Schulze to tell Tucker what had happened.  Schulze testified that she never heard Schneider talk to any other inmates about getting identification documents or about whether she would flee if released from jail.  Finally, Schulze testified that Hill had a reputation as a conniving and misleading person who was not truthful.

## II.    DISCUSSION

### A.    Reopening the December 2007 Detention Hearing.

In its previous Memorandum and Order of April 21, 2008 (Doc. 70), the Court concluded that defendants had met the statutory requirement for reopening the detention hearing because the closing of the Schneider Medical Clinic after the date of the initial detention hearing was new information that was material to issues of detention.  (Doc. 70 at 17.)  Also, while the Court concluded that the length of detention to that date, together with continued detention through the trial date in February 2009, was not so excessive under the circumstances of this case as to constitute a violation of due process, the Court did indicate that it would consider the length of detention as one factor in deciding the motion for bond.

(Doc. 70 at 13-16.)[11]

      B.     <u>Consideration of the Recorded Telephone Calls from the Jail.</u>

In its previous Memorandum and Order of April 21, 2008 (Doc. 70), the Court also concluded that in deciding the issue of detention or release, it could properly consider recordings of telephone calls between Defendants and their family members which were made while Defendants were incarcerated in the Butler County jail and were recorded by jail officials.  The Court further refused to allow Defendants to conduct discovery in connection with how the U.S. Attorney obtained the jail recordings.  (Doc. 70 at 17-22.)

The Court restates and incorporates the reasoning and conclusions in its prior Memorandum and Order concerning Dr. Schneider's motion for release on

---

[11] Linda Schneider's attempt to revisit the Government's arguments from the initial detention hearing that the Defendants' erratic behavior on the day of their arrest indicated that they were being evasive and suggested that they might be preparing to flee, is not new evidence that would warrant reopening a detention hearing.  None of Defendant's arguments (Doc. 40 at 2-3) concerning this event are new and all of that information was clearly known to Defendants at the time of the initial detention hearing.  A request to reopen a detention hearing is not a "do-over."  Likewise, the Court does not agree with Linda Schneider's argument that the testimony at the March 14 hearing about Linda Schneider's mental condition warrants the reopening of the detention hearing.  Having heard the testimony of Kerin Schell at the hearing, and having reviewed the report of her subsequent psychiatric examination (Doc. 121) (Sealed), the Court is not persuaded by Schell's opinions, and concludes that this testimony does not constitute the type of new evidence that would warrant reopening the detention hearing.  This testimony does not have a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community.  *See* 18 U.S.C. § 3142(f).

both the issue of reopening the detention hearing and also the issue of

consideration of the recorded telephone calls from the jail as to defendant Linda

Schneider.  (Doc. 70 at 10-22.)

    C.    <u>Consideration of Detention or Release.</u>

After consideration of the parties' briefs and exhibits, including the taped

phone conversations from the Butler County Jail,[12] and after hearing the testimony

at the July 17, 2008 evidentiary hearing, the Court must decide whether there are

conditions of release which will reasonably assure that Defendant Linda Schneider

will not flee and will likewise reasonably assure the safety of any other person and

the community.  If there are such conditions or combinations of conditions,

Defendant should be released; if there are not, she should continue to be detained.

18 U.S.C. § 3142(e).

The Court has previously noted that there is a presumption of detention in

this case under the ten-year term of incarceration imposed by the Controlled

Substances Act, 21 U.S.C. § 801 *et.seq.*.  (Doc. 10 at 2.)  The Indictment in this

---

[12] Defendants argued at the March 14 hearing that the portions of the phone conversations actually cited by the Government in its brief opposing release on bond were very short in duration and were taken out of context.  They urged the Court to listen to the recordings of the entire calls.  The Government had provided the Court with the full recordings of all of the telephone conversations from which the "clips" cited in their brief had been taken, and these recordings had also been provided to the Defendants as part of the discovery in this case.  The Court stated that it would review the full recordings in addition to the excerpts cited by the Government in its brief, and it has now done so.

case charges Defendant with such a crime and the indictment itself is a finding of probable cause.  *See* United States v. Stricklin, 932 F.2d 1353, 1355 (10th Cir. 1991).  Thus, the rebuttable presumption is applicable.

The Court has also previously identified the burden of proof that is applicable both as to the issue of flight and the issue of danger to others or the community.  (Doc. 10 at 3) (*citing* United States v. Cisneros, 328 F.3d 610, 616(10th Cir. 2003)).  The facts the judicial officer uses to support a finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence, while the Government's burden of proving that there is a serious risk that defendants might flee, requires a simple preponderance of the evidence.  *See* Cisneros, 328 F.3d at 617.

It is important, however, to note that Defendant Linda Schneider's motion for release also involves legal issues which were not applicable to co-defendant Stephen Schneider.  As previously noted, the hearing on March 14 concerning detention was combined with the detention issues in Linda Schneider's earlier case, No. 06-10106-01-MLB, where the Government has moved for revocation of Linda Schneider's probation.  Detention in such a case is governed by a different burden of proof.  *See* Fed. R. Cr. P. 32.1(a)(6) and 18 U.S.C. § 3143(a).  *See also*

15

discussion *infra*, pp. 21-22.

With the above standards in mind, the Court will consider both the issues of flight and danger in connection with the possible release of the Defendant Linda Schneider.

   1.    *Danger to the Community.*

As stated in the Memorandum and Order allowing release of Dr. Schneider on conditions, the Court's major concern at the time of the initial detention hearing in December 2007, was whether Dr. Schneider was likely to pose a danger to persons in the community by continuing to operate the Schneider Clinic and to dispense excessive amounts of controlled substances.  (Doc. 70 at 23.)  After reopening the detention hearing as to Dr. Schneider, the Court concluded that the fact that Dr. Schneider's medical license has been temporarily suspended by the Kansas Board of Healing Arts and the fact that the Schneider Clinic is totally closed changes the equation for deciding whether Dr. Schneider would be a danger to the community if he were released.  The same general reasoning applies to Linda Schneider insofar as she is being charged with activities related to the operation of the Schneider Clinic.

As with Dr. Schneider, the Court believes that there are conditions of supervision that it can impose that will reasonably assure that Linda Schneider will

16

not be involved – directly or indirectly – in any aspect of future treatment or care of patients or in any future dispensation of controlled substances to patients.  These conditions would also reasonably assure that Linda Schneider would not be submitting any future billings for medical services to any private health insurer or governmental agency that might be considered to be a part of any alleged health care fraud.

However, there are additional issues concerning danger that must be considered by the Court concerning Linda Schneider that were not present as to the co-defendant Stephen Schneider.  In opposing Linda Schneider's release, the Government also cited several threatening statements made by Linda Schneider (and her sister) concerning her prior appointed counsel and the Government attorney handling this case.  (Doc. 45 at 19-21.)

The Court has reviewed the recorded statements cited by the Government concerning animosity by Linda Schneider against her prior appointed counsel and the Assistant U.S. Attorney who is prosecuting this case.  As previously noted, the Court has reviewed the full recordings of these telephone conversations rather than just the portions cited by the Government in its brief opposing release.  It appears to the Court that some of the statements may be characterized as situations where Schneider and her sister are "blowing off steam" in frustration about the pending

17

charges in this case rather than an indication of serious threatened conduct.  Other statements, however, appear to be more in the nature of threats – such as wanting "her [Assistant U.S. Attorney] put out of her misery."  *See e.g.*, Doc. 45, Ex. 1, Call 5E.  This statement, along with statements indicating that Schneider wanted the prosecutor to "pay for what she's done" and want her "out of a job" are made during conversations where Schneider and her sister talk several times about suing the Government to get back the assets the Government had seized from Schneider and her family.  *Id.*; *see also*, Doc. 45, Ex. 1, Calls 4D and 5F.

To the extent the above comments may relate only to an intent to seek <u>legal redress</u> through the judicial system, they would not appear to be "threats" within the definition of federal  criminal statutes.   *Cf.* 18 U.S.C. § 115(a)(1)(B) (which addresses any threats to assault a Federal law enforcement officer with the intent of intimidating, impeding or interfering with such officer while engaged in the performance of official duties or with the intent to retaliate against the officer on account of the performance of the officer's official duties).  However, the language used during some of these conversations implies more than future legal proceedings when it includes statements about putting someone out of their misery. The Court does not take such comments lightly.

   2. *Flight or Failure to Appear.*

18

The Court also outlined in its prior Memorandum and Order the factors which gave it concern about the possibility that Defendants might flee and not appear for trial and future court proceedings.  These included a past history of regular travel to Mexico, the ownership (or long term lease) of real property in Mexico, the existence of bank accounts in Mexico, and the fact that Defendants had close friends or acquaintances in Mexico that could help them.  (Doc. 70 at 27.)  After considering all the evidence, the Court concluded that, as to Dr. Schneider, while he had the financial ability to flee to Mexico,[13] and while the Court remained concerned about Defendants' ties to Mexico, it did appear that there were conditions of release that could be imposed that would reasonably assure that Defendant Stephen Schneider does not flee and will appear for future court proceedings.  However, there is additional evidence cited by the Government that would implicate a more serious likelihood of flight by Defendant Linda Schneider which was not attributable to Defendant Stephen Schneider.  (*See* Doc. 45 at 12-13.)

To some degree several of these statements by Linda Schneider might be construed as nothing more than her optimistic views about what Schneider would

_____

[13] The Court's prior analysis of Defendants' financial condition and assets which are not immediately subject to forfeiture applies equally to Linda Schneider.  (*See* Doc. 70 at 27-28.)

like to happen if she were released from jail.  These include statements like: a

desire to take Siobhan Reynolds to Mexico for the time of her life, Doc. 45, Ex. 1,

Call 3F; an indication that she would stay in jail another month if she could get on

a plane and go where she wants, Doc. 45, Ex. 1, Call 4E; and she would stay in jail

until she could head South with a mechilada in her hand, Doc. 45, Ex. 1, Call 5E.[14]

These statements could also be construed as a present intent on Linda Schneider's

part to flee to Mexico as soon as she is released from jail or they could be

construed as what Linda Schneider is looking forward to doing after "everything

has blown over" or "when this is all over."  *See e.g.*,  Doc. 45, Ex. 1, Calls 5D and

5E.  In either event, these statements certainly evidence a strong desire on Linda

Schneider's part to travel to Mexico, something she has done on numerous

occasions in the past.

---

[14]  The Court notes that the recorded conversations of Linda Schneider include numerous statements by her to the effect that she wanted to stay in jail as long as it would help the cause, that she could sit in jail as long as she needed to so long as she knew the rules of the game.  *See e.g.*, Doc. 45, Ex. 1, Calls 4E, 5D, 5E and 20B.  It also appears that Linda Schneider was being told by others that the prosecutor wanted her out of jail and that if she got out of jail it would "ruin everything," that everything "would collapse," and that she would do "more damage" if she sits in jail.  *Id.*

*3.    Applicable Burden of Proof in these Combined Proceedings.*

Because the detention hearing in this case has been consolidated as to the

issue of detention at Defendant's request, the Court must consider the differences

in the burden of proof that would apply to each case.  In cases involving

proceedings to revoke or modify probation or supervised release, Fed. R. Crim. P.

32.1(a)(6) changes the burden of proof concerning detention:

> **(6)   Release or Detention.**  The magistrate judge may
> release or detain the person under 18 U.S.C. § 3143(a)
> pending further proceedings.  <u>The burden of establishing
> that the person will not flee or pose a danger to any other
> person or to the community rests with the person.</u>
> (Emphasis added).

The provisions of 18 U.S.C. § 3143(a), referenced in Rule 32.1, are denominated

as applying to the issue of release or detention of a person pending sentencing, but

because they are incorporated in Rule 32.1, they also must be considered in cases

of revocation of probation.  Section 3143(a) provides that the person is to be

detained, "unless the judicial officer finds by <u>clear and convincing evidence</u> that

the person is not likely to flee or pose a danger to the safety of any other person or

the community if released under section 3142(b) or (c)." (Emphasis added).

Therefore, under Rule 32.1 and 18 U.S.C. § 3143(a), not only does the burden of

proof shift from the Government to the person seeking release, but the quality of

the evidence which the magistrate must find to release the person is heightened.

21

No longer is the question of whether a person is likely to flee judged only by the preponderance of the evidence; instead, under Rule 32.1, the evidence that the person will <u>not</u> flee is to be established by clear and convincing evidence.

Although it might seem to some that the burden of proof is not an important factor, it is often the case that a decision in fact turns directly on who has the burden of proof and whether that burden has been met.  In this case, if the provisions of Rule 32.1 and 18 U.S.C. § 3143(a) govern the issue of detention, the Court finds that Linda Schneider has failed to meet her burden of proving, by clear and convincing evidence, that she will not flee or pose a danger to any other person or the community.  Other than the presentation of letters from family and friends that opine that she will not flee if released on bond, and her argument that she traveled to Mexico while on probation several times and still came back to the U.S. even though she knew she and her husband were being investigated concerning Clinic matters, Defendant has actually come forward with little evidence to convince that Court that she will not flee if released on conditions.  She has not rebutted the Government's evidence that she has the financial ability to flee, she has not rebutted the Government's evidence that she has a vacation home in Mexico (whether owned or occupied under a long-term lease), she has not rebutted the Government's evidence that her "adopted" son is in Mexico where he can assist

her in avoiding detection, and the taped phone calls discussed above clearly show a strong desire on her part to go to Mexico.[15]

Similarly, Linda Schneider has not come forward with evidence (or even a proffer) to rebut the Government's allegations about threats concerning prior appointed counsel and the prosecuting attorney in the case. Again, under Rule 32.1 and 18 U.S.C. § 3143(a), Defendant has failed to meet her burden of proof by clear and convincing evidence.

If the Court is to consider the issue of detention solely under the Bail Reform Act, 18 U.S.C. § 3142(e), however, the question is a closer one,

---

[15] Defendant argues that she is not a flight risk because she was allowed to travel to Mexico by her probation officer and the Court in Case No. 06-10106-MLB, and she always returned for any court appearances. (Doc. 40 at 7.) She further argues that this occurred while the investigation was underway concerning the Schneider Clinic, and that if she was going to flee she could have done so before these charges were brought, but she did not. *Id.* This argument is not persuasive. Defendant is currently facing more serious circumstances than she was earlier since an Indictment has now been handed down, and the penalties Defendant is facing, if convicted, are substantial. In addition, Defendant was told early on after the Indictment in this case by her friends and acquaintances that the charges were "crap," they would quickly be quashed and the case would never go to trial. *See e.g.*, Doc. 38, Ex. 7, Calls 1F and 8A. However, the trial judge has recently denied Defendants' motion to dismiss the indictment (Doc. 155) and denied Defendants' motion to suppress information obtained through execution of search warrants. (Doc. 154.) Thus, Linda Schneider is now facing a far different situation than she was in 2007 when she was allowed to travel to Mexico while on probation. Courts have noted that even where a defendant has performed well on bond in the past, where the charges are superseded and possible penalties are increased, this increases the risk of flight. *See e.g.*, U.S. v. Barker, No. 02-40157-01-JAR, 2004 W.L. 123270 at * 3 (D. Kan. Jan. 09, 2004). This is effectively the situation now facing Linda Schneider in this case.

particularly as to the likelihood of flight.  First, as to whether Linda Schneider

would be a danger to others or the community if released, while the Court is very

concerned about Linda Schneider's ill-advised comments concerning her prior

defense counsel and the prosecuting attorney, the Court does not find that the

Government has established by clear and convincing evidence that there are no

conditions or combination of conditions that would allow Linda Schneider to be

released while reasonably assuring the safety of others (including the prosecuting

attorney) and the community.

As to the likelihood that Linda Schneider would flee and fail to appear for

future hearings in this case, the Court finds that the Government has shown by a

preponderance of the evidence that Linda Schneider is likely to flee if released, and

that there are no conditions or combination of conditions that can reasonably

assure that she will not do so if she is released.  As noted above, the Government

has established that Defendant has the financial means to flee to Mexico, a home

there where she could reside, and close friends or relatives who could assist her in

avoiding detection.  Her desire to get to Mexico is clear from her recorded

telephone calls.  While she might argue that she had no intent to go to Mexico until

this case is resolved, other statements indicate that she wanted to be able to go

where she wants to go as soon as she gets out of jail.[16]

Linda Schneider has argued that she poses no greater risk of flight than her husband, and therefore suggests that his release on conditions, including monitoring by GPS, should automatically apply to her and assure that she does not flee.  However, the record does not establish the Stephen Schneider has had the same degree of involvement with, and travel to, Mexico as has Linda Schneider.  In Linda Schneider's earlier motion for permission to travel to Mexico while on probation in Case No. 06-10106-MLB, she never mentioned that her husband also travels often to Mexico.  (No. 06-10106-MLB, Doc. 22.)  In fact, she states in that motion that <u>she</u> maintains this second home in Mexico, <u>she</u> spends a substantial amount of time there, <u>she</u> pays taxes in Mexico in support of <u>her</u> home life there, and <u>she</u> spends a considerable amount of time in Mexico working on humanitarian projects.  *Id.*  Her letter of March 2, 2007 to the Court in her prior case also indicates that <u>she</u> initiated the first trip to Mexico, that <u>she</u> found the boy [Eric Taylor] who helped her navigate the Mexican bureaucracies, that <u>she</u> bought the house and let Taylor move in, and that <u>she</u> is the one who investigated the

---

[16]  Linda Schneider notes that she voluntarily surrendered her passport and those of her children, and that this indicates that she has no intent to flee to Mexico.  (Doc. 40 at 8.)  The docket sheet in Case No. 06-10106-MLB indicates that she did surrender her passport to the U.S. District Court on November 1, 2007 (Doc. 31), but there is nothing to show that she also surrendered the passports of her children.

possibility of adopting him.  (No. 06-10106-MLB, Doc. 26, Ex. 4.)  The only thing

that is said about her husband's travel to Mexico is a passing comment that after

she had spent two years  working in Mexico, "[m]y kids and husband had also been

making trips to Mexico . . ."  *Id.*  Therefore, the record concerning nature and

extent of contacts with Mexico clearly distinguishes Linda Schneider's situation

from that of her husband and co-defendant Stephen Schneider.[17]

    The above letter also makes it clear that Linda Schneider continues to try to

figure out a way to "put all of us back together," including Eric Taylor, the person

for whom she obtained a false social security card.  (No. 06-10106-MLB, Doc. 26,

Ex. 4.)  The Government argues that Linda Schneider is harboring a fugitive by

---

[17]  It could be argued that even if Defendant were to flee to Mexico, the United States could seek her extradition pursuant to the Treaty signed May 4, 1978 between United States of America and United Mexican States, 31 UST 5059.  Article 2, Section 1 of the Treaty states that extradition shall take place for wilful acts which fall within any of the clauses of the Appendix and which are punishable in accordance with the laws of both countries by deprivation of liberty, the maximum of which shall not be less than one year. This is known as the doctrine of dual criminality which allows extradition only where the offense charged is punishable as a serious crime in both the requesting and requested countries.  Peters. V. Egnor, 888 F.2d 713, 718 (10th Cir. 1989).  In order to satisfy the requirement of dual criminality under the Treaty, the statutes of both Mexico and the United States must be substantially analogous.  Ross v. U.S. Marshal for the East. Dist. of Okla., 168 F.3d 1190, 1195 (10th Cir. 1999).  The focus of dual criminality is on the criminality of the defendant's alleged conduct, not on how the crime is defined in the particular statutes.  *See* United States v. Levy, 905 F.2d 326, 328 (10th Cir. 1990), *cert. denied* 498 U.S. 1049 (1991).  The nature of the crimes charged in the Indictment in this case may be such that there are no analogous crimes recognized in Mexico, and if that were true, extradition might not be available in this case.  This further highlights the danger of the risk of flight in this particular case.

aiding Taylor and refusing to tell authorities where he can be located.  The Court

does not need to consider those allegations in ruling on the issue of detention in

this case.  However, her strong feelings for Taylor as part of her family does

highlight why Linda Schneider might flee to Mexico where Taylor is supposedly

living.

 In reaching these findings, the Court notes that it has <u>not</u> relied upon any of

the supplemental testimony presented during the hearing of July 17, 2008.  While

the Court has effectively granted the Government's Motion to Supplement the

Record (Doc. 96) by holding the evidentiary hearing on July 17, 2008, none of the

evidence presented at that hearing was persuasive on the issue of detention.  The

Court finds that a good portion of the testimony of Stacey Hill is not credible based

upon the circumstances presented.  For example, because Linda Schneider is

trained as a nurse, there would appear to be no reason why she would have asked

another inmate – particularly one not medically trained – what she should tell the

jail nurse to support a finding of bi-polar disorder.  Also, the fact that Hill could

never state why she undertook on her own to send the letter to the prosecuting

attorney in this case severely undermines her credibility and suggests that Hill may

have been concerned about the fact that Schneider had witnessed the jail incident

between Hill and Tucker and sought to give testimony to neutralize Schneider's

position.[18]  While Hill's testimony about Schneider's request for forged

identification documents is not as far-fetched (particularly in light of the fact that

Schneider herself has pled guilty in Case No. 06-10106-MLB to making false

statements in connection with obtaining a false social security number for Eric M.

Taylor),[19] it is not sufficient to convince the Court that Schneider in fact sought

false documents in order to flee the country.[20]

    Finally, the Court has considered the Government's argument that Linda

Schneider has attempted to mislead the Court about her mental condition by

presenting the testimony of Kerin Schell.  While it does appear that Linda

Schneider may have designated or suggested the name of the psychiatrist to

interview her and to testify, and while that testimony is contradicted in several

_____

    [18]  Notwithstanding the Court's findings concerning the credibility of Hill's testimony, the Government had every right to bring that testimony before the Court for consideration once it was brought to the Government's attention.  All of the witnesses who testified at the July 17 hearing were currently in some stage of incarceration for their past criminal conduct, and were subject to serious cross-examination due to their alleged bias.  Tucker clearly was pursuing a separate agenda as a result of her disputes with Hill while in the Butler County jail, and Shulze admitted that Linda Schneider was probably one of her closest friends at the jail.

    [19]  *See* Case No. 06-10106-MLB, Doc. 18 (Plea Agreement which states the factual basis for Schneider's guilty plea).

    [20]  The Court does find it somewhat bothersome that Linda Schneider never made a specific proffer at the July 17 hearing to deny Hill's allegations.  Under the Bail Reform Act, she clearly could have made such a proffer.  18 U.S.C. § 3142(f) (at the detention hearing a person may "present information by proffer or otherwise.")

28

regards by the subsequent court-ordered psychiatric examination, the Court has not found this to be a reason for detention of Linda Schneider.

## CONCLUSION

Regardless of which burden of proof is applied to the facts in this case, whether Fed. R. Cr. P. 32.1(a)(6) or the Bail Reform Act, 18 U.S.C. § 3142, *et.seq.*, the Court finds that there is a substantial risk that Linda Schneider would flee or fail to appear at future hearings if she were released, and that there are no conditions or combination of conditions which can reasonably assure her appearance as required.  For this reason, her motion for release on her own recognizance or to set bond (Doc. 39) is denied and she is to remain in the custody of the U.S. Marshal pending trial in this case.[21]

Defendant is advised that she has the right to have this decision reviewed by the assigned U.S. District Judge pursuant to the provisions of 18 U.S.C. § 3145(b).

Because the Government previously stated at the March 14, 2008 hearing that if Linda Schneider was detained in this case, the Government would then withdraw the motion to revoke her probation in Case No. 06-10106-01-MLB, the Court will defer setting a preliminary hearing in that case for ten (10) days to allow

---

[21]  Because of this finding, it is not necessary to determine which burden of proof applies on the issue of danger to others or to the community.

the parties time to review this Memorandum and Order and decide how they wish to proceed.  If the Government does not withdraw the motion to revoke, the Court will set a preliminary hearing in  Case No. 06-10106-MLB pursuant to the provisions of Fed. R. Crim P. 32.1(b)(1).

IT IS SO ORDERED.

Dated at Wichita, Kansas, this 30th day of July, 2008.


  s/   DONALD W. BOSTWICK   
DONALD W. BOSTWICK
United States Magistrate Judge