# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.   07-10234-01-02-MLB |
| ) | |
| **STEPHEN J. SCHNEIDER,** ) | |
| **LINDA K. SCHNEIDER, a/k/a,** ) | |
| **LINDA K. ATTERBURY,** ) | |
| **d/b/a SCHNEIDER MEDICAL** ) | |
| **CLINIC** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER ON PENDING MOTIONS

Presently before the undersigned magistrate judge are the following motions, responses, replies, objections and other related miscellaneous filings:

Motion 1. Government's Motion to Modify Conditions of Release and Motion for Discovery, filed February 6, 2009 (Doc. 325), and

Defendant Stephen Schneider's Response to Motion to Modify Bond, filed March 13, 20009 (Doc. 360), and

Defendant Linda Schneider's Motion for Leave and Consolidated Responses/Replies Pursuant to Court Order (Doc. 357), filed March 15, 2009 (Doc. 361);[1]

---

[1] Defendant failed to file this response within the time specified in the Court's Order Setting Briefing Schedule (Doc. 357), and allege that "[D]ue to excusable neglect" they should be allowed to file the response out of time.  While Defendant has wholly

                Government's Consolidated Reply to Defendants' Responses to Motion to Modify Conditions of Release, filed March 18, 2009 (Doc. 363).[2]

Motion 2.    Government's Motion for a *Nebbia* Determination and Memorandum in Support, filed February 10, 2009 (Doc. 336);

                The Court's Memorandum and Order of February 25, 2009 (Doc. 354), setting out specific requirements to be met by Defendant Linda Schneider concerning the source of the bond posted on her behalf;

                Defendant Linda K. Schneider's documents filed March 13, 2009 (Doc. 362) (Sealed and *Ex Parte*), concerning the sources of funds for her bond;

                Defendant Linda K. Schneider's Opposition to the Government's Motion for a *Nebbia* Determination, filed March 13, 2009 (Doc. 359);

                Government's Consolidated Reply to Defendants' Responses to Motion to Modify Conditions of Release, filed March 18, 2009 (Doc. 363)[3];

                Government's Objections to the Sources of Defendant Linda Schneider's Posted $100,000 Bond, filed March 18, 2009 (Doc. 364);

                Government's *Ex Parte* and In Camera Submission Objecting

---

failed to state any facts which would support a finding of excusable neglect, the court will allow the filing of the response and will proceed to rule on the merits of the motions. This Doc. 361 also relates to another Government motion identified as Motion 4, *infra*.

   [2] This "consolidated reply" is directed to three documents filed by Defendants, Doc. No's 359, 360 and 361.

   [3] *See* note 2, *supra*.

      to the Sources of Defendant Linda Schneider's Posted $100,000 Bond, filed March 18, 2009 (Doc. 371) (Sealed and *Ex Parte*);

      Defendant Linda K. Atterbury's Motion to Strike and Alternative Response to the Government Objections to the Sources of Bond (Doc. 364), filed March 25, 2009 (Doc. 377);

      Government's Reply to Defendants' Response to the Government's Objections to the Sources of Bond, filed March 31, 2009 (Doc. 380).

Motion 3. Motion for Protective Order by Defendants, filed February 23, 2009 (Doc. 350), and

      Government's Response in Opposition to Defendants' Motion for Protective Order, filed February 26, 2009 (Doc. 356).

Motion 4. Government's Motion to Modify Conditions of Release and for Inquiry Pursuant to 18 U.S.C. § 3142(g) and Memorandum in Support, filed February 26, 2009 (Doc. 355);

      Defendant Stephen Schneider's Response to Motion to Modify Bond, filed March 13, 2009 (Doc. 360);

      Defendant Linda Schneider's Motion for Leave and Consolidated Responses/Replies Pursuant to Court Order (Doc. 357), filed March 15, 2009 (Doc. 361); and

      Government's Consolidated Reply to Defendants' Responses to Motion to Modify Conditions of Release, filed March 18, 2009 (Doc. 363).[4]

Motion 5. Defendant's Motion for Relief, filed March 20, 2009 (Doc. 372), seeking an order to unseal certain filings by the

---

[4] *See* note 2, *supra*.

>Government, specifically Doc's 368, 370 and 371;[5]

>Government's Motion to Strike Pleadings, filed March 24, 2009 (Doc. 376);

>Government's Response in Opposition to Defendants' Motion for Relief as to Doc No's 368, 369 and 370, filed March 30, 2009 (Doc. 379).

The above filings are a convoluted, duplicative[6] and confusing series of motions, briefs and objections, many of which are "consolidated" responses or replies to more than one other pending motion. The filings are replete with claims of wrongdoing which flow in all directions. The Government claims that defendants have not been forthcoming with information about their finances, and defendants claim that the Government is harassing them with overreaching demands for financial information.

---

[5] Defendants' Motion for Relief as to documents other than Doc. No's 368, 370 and 371, was denied by Judge Crow because those documents directly related to grand jury matters. See Memorandum and Order of April 2, 2009 (Doc. 381).

[6] For example, the court believes that the Government's Motion 4 above (Doc. 355) is effectively an amendment and consolidation of earlier Motion 1 and Motion 2. In an earlier Memorandum and Order, the court noted that the Government's initial motion to modify the conditions of release (Doc. 325) (Motion 1 above) was based on 18 U.S.C. § 3145(a)(1). *See* Doc. 327 at 25 n. 10. As such, this would be a motion directed to the district judge and not the magistrate judge. Likewise, in another Memorandum and Order, the court noted that the *Nebbia* issue [United States v. Nebbia, 357 F.2d 303 (2nd Cir. 1966)] had been specifically incorporated into the Bail Reform Act as 18 U.S.C. § 3142(g)(4). *See* Doc. 354 at 4-7. It therefore appears that the Government drafted its subsequent Motion 4 (Doc. 355) to address both of these issues since that motion seeks a modification of the conditions of release under 18 U.S.C. § 3142(c)(3), and specifically references an inquiry of the source of the bond under 18 U.S.C. § 3142(g)(4).

After review of the above filings, the court believes that the matters now pending before the court basically involve three requests by the Government. First, the Government wants the court to modify the bonds of both defendants to require them to secure the $325,000 Appearance and Compliance Bonds that each defendant has posted in this case. As part of this request, the Government wants the court to require the defendants to provide detailed financial information about their financial condition and liquidation of any assets for consideration concerning the amount of any secured bond. Second, the Government wants a hearing under either *Nebbia* or 18 U.S.C. § 3142(g)(4) concerning the source of the $100,000 used as a deposit to secure the bond of Linda Schneider. Finally, the Government wants the court to determine that the cash deposit posted in this case to secure the release of defendant Linda Schneider is not adequate because it was posted by other individuals who the Government argues do not have adequate "moral suasion" over Linda Schneider to reasonably assure her appearance at trial. To support their objections about the three persons who contributed the $100,000 in cash that was posted as security for the bond of Linda Schneider, the Government not only filed a public objection (Doc. 364), they also supplemented their objections by filing, with the court's approval, additional arguments and factual assertions as a sealed, *ex parte* document (Doc. 371).

Defendants oppose any hearing concerning their financial condition, whether under *Nebbia* or under the Bail Reform Act, they oppose any modification of the bonds previously posted by them, and they ask the court to unseal the Government's sealed, *ex parte* filing concerning objections to the persons who posted the $100,000 bond for Linda Schneider's release. They also seek a protective order against demands by the Government for the production of additional documents concerning defendants' financial condition.

**Procedural Background**

There have been numerous hearings, orders, motions for reconsideration and other filings related to the defendants' requests for release on conditions pending their trial. By way of a brief review, as a condition of their release, the court required each defendant to execute Agreements to Forfeit Property[7] (Doc No's 81, 345), to execute Appearance and Compliance Bonds in the amount of $325,000[8] for each defendant (Doc No's 80, 344), and has required defendant Linda

---

[7] The specific property described in the forfeiture agreements was property that the Government sought to acquire by forfeiture proceedings both in this criminal case and in a related civil forfeiture action.

[8] The $325,000 appearance and compliance bonds were calculated by the court based upon the Government's arguments early in the case that defendants had approximately $650,000 in "substitute" assets that were not subject to restraint by the Government. As the court has previously noted, the bonds were not "secured" by any assets of defendants and there was no restriction that prevented defendants from liquidating these assets for *bona fide* purposes. *See* Doc. 327 at 22 n. 9.

Schneider to secure her Appearance and Compliance Bond by posting a $100,000 cash deposit with the Clerk of the Court. (Doc. 327.) Other conditions apply to these defendants including, but not limited to, GPS monitoring. (Doc. No's 70, 77, 79, 343.) Defendant Stephen Schneider has been released on his conditions since April 24, 2008, and defendant Linda K. Schneider has been released on her conditions since February 11, 2009.

At a February 5, 2009 hearing concerning Linda K. Schneider's motion to reconsider the amount of the cash deposit required by the court to secure her Appearance and Compliance Bond, defendants proffered certain financial information concerning their ability to post any cash deposit. After this hearing, the Government immediately followed up by moving to modify the Appearance and Compliance Bonds for both defendants so that the bonds would be fully secured. (Doc. 325) (Motion 1 above). In the motion, the Government also sought discovery of more detailed financial information from defendants to show specifically what assets had been liquidated, when and how they were liquidated, and what payments had been made by defendants to their attorneys, their expert witnesses and their investigators. A few days later, the Government also filed their motion for a *Nebbia* hearing as to the source of the $100,000 in cash that was deposited to secure Linda Schneider's Appearance and Compliance Bond. (Doc.

336) (Motion 2 above).

By Memorandum and Order of February 25, 2009 (Doc. 354), the court required defendant Linda Schneider to file, *in camera*, specified affidavits and documents to support the sources of the $100,000 used as a cash deposit. (Doc. 354 at 8-10.) Those affidavits and documents were filed on time as sealed, *ex parte* documents. (Doc. 362) (Sealed and *Ex Parte*). The Government has not seen those documents and affidavits. However, based on another filing by defendants concerning the request for a *Nebbia* hearing (Doc. 359), the Government could ascertain who had provided the funds for the $100,000 deposit, and they immediately objected to those individuals' providing the deposit. (Doc. 364.) The Government's opposition is two fold: first, they argue that the individuals who provided the funds are listed as defense trial witnesses and that they do not allegedly have the sufficient "moral suasion" over Linda Schneider to reasonably assure that she will appear for future proceedings; and second, they argue that the court required Linda Schneider herself to post the bond, not some third parties. *Id.*

Motion 5 filed by defendants (Doc. 372) seeks to have the court unseal the supplemental filing by the Government under seal and *ex parte* (Doc No's 368, 370 and 371) in opposition to the sources of funds for the $100,000 cash deposit. The

Government's response argues that information contained in that sealed, *ex parte* filing directly relates to matters before the grand jury. (Doc. 379.)

Motion 3 filed by defendants (Doc. 350) seeks a protective order preventing the U.S. Attorney from seeking additional financial information from defendants. The letter from the U.S. Attorney which precipitated the motion was sent shortly after the February 5, 2009 hearing before the magistrate judge when Linda Schneider sought to have the amount of the cash deposit reduced. One of the requests in the letter was for all documents evidencing the sources of the $100,000 bond. (Doc. 350-2 at 2.) The letter continued by asking for detailed information concerning any assets that had been liquidated and how the funds from those assets had been expended. *Id.*

## DISCUSSION

1.    Motions to modify bond conditions (Motions 1 and 4).

These motions are based upon the fact that defendants have, since the beginning of this case, liquidated several of their assets in order to pay living expenses, attorneys fees, expert witnesses and investigators. When the court initially set the amount of the appearance and compliance bonds at $325,000 for each defendant, that amount was calculated based on the Government's

representation of the amount of assets allegedly owned by defendants that were not subject to forfeiture claims of the Government. As noted in prior opinions, the Government could not legally restrain defendants' use of these "substitute assets." *See* Doc. 70 at 7, *citing* United States v. Jarvis, 499 F.3d 1198, 1205 (10th Cir. 2007). As the court has also previously noted, even though the amount of the bonds was based on the alleged value of these substitute assets, the substitute assets themselves were not pledged to secure the bonds, and defendants were not restrained from the use of those assets. *See* note 8 *supra.* At the February 5, 2009 hearing, the court noted that because many of these substitute assets had allegedly been liquidated, the Appearance and Compliance Bonds had become essentially recognizance bonds. The Government interpreted these statements as an invitation to seek an order modifying the conditions of release to require that the bonds be fully secured by assets or cash.

The Government argues that defendants do have assets that could be used to secure the bonds, and specifically identifies "a mortgage-free home in Haysville, Kansas" and "a home in Oklahoma." (Doc. 325 at 3.) These two properties, however, are already subject to forfeiture pursuant to the terms of the Agreements to Forfeit Property executed by both defendants. ( Doc. No's 81, 345.)[9] In

---

[9] The Agreements to Forfeit Property incorporate specific assets that were identified in the Government's Motion to Revoke Appointment of Counsel, Doc. 16-2,

addition, these properties are also subject to the Government's claims of forfeiture in both these criminal proceedings as substitute property, Doc. 167 (First Superseding Indictment) ¶ 135, Real Property No. 1 and 2, as well as related civil forfeiture proceedings. Case No. 07-1119-MLB-DWB, Doc. 12 at ¶¶ 5,6 (describing the Haysville, Kansas property and the Oklahoma property). Therefore, as a practical matter, those assets are already security to assure that the defendants appear at future proceedings.

The court took into consideration the assets identified by defendants during the hearing on February 5, 2009 in deciding to retain a requirement that Linda Schneider secure her Appearance and Compliance Bond with a cash deposit of $100,000. While the court expressed concerns about the completeness and accuracy of some of the information tendered, particularly about property in Mexico, Doc. 327 at 8-10, this was also taken into consideration in setting all of the bond conditions for Linda Schneider. The court sees no reason to re-open or modify the bond conditions for either defendant at this time.

Likewise, while the Government also seeks detailed discovery about when and how certain assets were liquidated and to whom certain payments were made, the court denies this request. These matters were the subject of the February 5,

---

pp. 3-6. The Haysville home is Item No. 2 of that document and the Oklahoma home is Item No. 3.

2009 hearing, and as part of that hearing the Government did not take the position that the liquidation of most of these items was unreasonable. *See* Doc. 327 at n. 22. The fact that the Government changed its mind the next day and sought additional discovery of these same items does not convince the court that the broad-reaching discovery now requested by the Government is necessary in connection with the bond conditions.

The court will, however, allow the Government to have access to the unredacted Defendant's Exhibit 1 which was admitted at the February 5, 2009 hearing and which has been filed under seal and *ex parte*. (Doc. 341) (Sealed and *Ex Parte*). Accordingly, upon the filing of this Memorandum and Order, the court is lifting the *ex parte* designation for that exhibit (Doc. 341) <u>although it will remain as a sealed document</u> for purposes of public access. The Government may contact the Clerk's Office and arrange for the Clerk to forward copies of Doc. 341 to the Government's counsel by a password-protected email transmission.

    2. <u>Hearing into Source of $100,000 cash deposit (Motions 2 and 4).</u>

The court has previously discussed the authority for the Government's request for a hearing concerning the source of any cash deposit made on behalf of defendant Linda Schneider. *See* Doc. 354. Whether that request is for a *Nebbia* hearing or for a hearing under the Bail Reform Act, 18 U.S.C. § 3142(g)(4), the

Government is entitled to inquire into the source of any bond or cash deposit posted to secure a defendant's release. The court reserved a decision on the nature of any such inquiry, however, until it had examined the documentation and affidavits which defendant Linda Schneider was required to submit to the court. (Doc. 354 at 7-10.) When counsel for Linda Schneider submitted those required documents to the court, they followed the court's instruction and did not serve copies on the Government. See Doc. 362 at 1 (Sealed and *Ex Parte*). However, counsel indicated that if the court so directed they would serve the Government with copies of those documents. *Id.*

The court now believes that it is appropriate that the Government have access to copies of the affidavits and documents submitted by Linda Schneider concerning the source of the $100,000 cash deposit. Those documents include sworn affidavits by the three individuals who participated in providing the $100,000 deposit for Linda Schneider -- Lee E. Atterbury, Tim McDonald and Curtis Atterbury -- along with documents concerning the source of the funds from each individual. Accordingly, upon the filing of this Memorandum and Order, the court is lifting the *ex parte* designation for those documents (Doc. 362) although they will remain as a sealed document for purposes of public access. The Government may contact the Clerk's Office and arrange for the Clerk to forward

copies of Doc. 362 to the Government's counsel by a password-protected e-mail transmission.

The remaining question then is whether some type of actual hearing is also necessary under the circumstances of this case. In the Governments' "public" objections to these three individuals providing the cash deposit, the Government points out that these three are all listed as trial witnesses by defendants, and argues that none of them have sufficient "moral suasion" over Linda Schneider to reasonably assure her appearance at trial. (Doc. 364 at 1-3.) The Government also argues that the court required Linda Schneider herself to post the deposit rather than allowing a third party or parties to do so. (Doc. 364 at 3-4.) The court will address these arguments in reverse order.

The court disagrees with the Government's position that Linda Schneider herself was required to provide the cash deposit. When the court initially set the conditions of release for Linda Schneider, it simply required an Appearance and Compliance Bond in the amount of $325,000, "with a cash deposit of $100,000." (Doc. 343 at 2 ¶ 5.) It was only when Linda Schneider alleged that she could not post that amount of cash that the court held the February 5, 2009 hearing. While the court concluded as a result of the hearing that Linda Schneider had not proven that she was unable to post the required cash deposit, Doc. 327 at 14, it did <u>not</u>

direct that the $100,000 deposit had to be made solely by defendant Linda Schneider.

The court also does not accept the Government's other publically-stated reasons for refusing to allow the three stated individuals to post the cash deposit. First, simply being listed as a defense witness should not preclude an individual from financially assisting defendant to obtain her release. In this case there is no allegation or evidence that the funds used by any of the three individuals for the deposit were illegally obtained or were derived from any illegal activity. Second, the court does not find that the Government has adequately established that these three individuals lack sufficient "moral suasion" over Linda Schneider. All of the three individuals are close friends or relatives of Linda Schneider.[10] The Government presents its speculation that all three individuals might actually like for Linda Schneider to flee so that they would have no further involvement in the pending court proceedings. The Government then speculates that in the event

---

[10] It is more than somewhat ironic that the Government now objects to Linda Schneider's father, Lee Atterbury, as a source of part of the cash deposit. Previously, in its Motion to Modify Conditions of Release (Doc. 325), the Government asked that the court order that the Appearance and Compliance Bond for Linda Schneider be fully secured, and specifically stated that "given the defendants' family's representations to the Court that the defendants will not flee or otherwise violate[d] their conditions of release, there is no reason not to expect the family to be willing to put up security for their release." (Doc. 325 at 3.) In making that argument, the Government also stated that Mr. Atterbury had the ability to post security for the bond by cashing in a certificate of deposit. (Doc. 325 at 3 n. 2.)

15

Linda Schneider did flee, she could simply reimburse these individuals for any loss they suffered. The court has set the amount of the deposit at a sufficient level that its forfeiture would be a significant detriment were it to be forfeited for Linda Schneider's failure to appear. The court will not disqualify the deposit from these three individuals simply on the Government's unsupported speculation.

The Government also sought to make additional arguments as to why these three individuals should not be considered as a proper source for the cash deposit. *See* Doc. 364 at 2 n. 1 ("With the Court's permission, the government will submit a separate document, *ex parte* and *in camera*, explaining in detail its objections to the sources of defendant's posted bond. An *ex parte* and *in camera* submission is necessary under Federal Rule of Criminal Procedure 6(e) and Department of Justice regulations."). The Government then moved for permission to file these additional objections *ex parte* and under seal (Doc. 368), and the court granted that motion. (Doc. 370.) The Government based its motion to seal on Fed. R. Cr. P. 6(e) which relates to proceedings before a Grand Jury, and the court has accepted its representations. However, this presents the court with additional problems.

Because the Government has elected not to provide the defendants with the full explanation of the reasons for its objections to the individuals who provided the funds for the deposit, any hearing under 18 U.S.C. § 3142(g)(4) would present

serious due process issues.  The Government should not be allowed to unilaterally seek discovery through such a hearing when it is unwilling to publically address its objections to the individuals who provided the funds.  Therefore, the court finds that because the Government has elected to maintain secrecy over its reasons for objecting to the individuals who provided the funds, the Government has effectively waived any right to a hearing under 18 U.S.C. § 3142(g)(4).  Furthermore, it appears clear to the court that the Government does not need a hearing in order to state its objections to the source of funds since it has already lodged those objections, albeit by means of a sealed filing.  The court concludes that the release to the Government of the affidavits and documents submitted by the three individuals which are being provided as a result of this Memorandum and Order will give the Government sufficient information concerning the source of the funds used as a deposit, and that no further hearing is necessary.

       3.    <u>Defendants' motion to unseal Doc. 371 (Motion 5).</u>

Because the court has not considered the objections submitted under seal and *ex parte* by the Government in ruling on the present motions, and because the Government has raised the Grand Jury issue, the court finds that defendants' motion for relief which asks to unseal these objections should be denied.[11]

---

[11] As previously noted, Judge Crow has denied this motion insofar as it pertains to other documents filed by the Government under seal.  *See* n. 4 *supra*.

4.      Defendants' motion for a protective order (Motion 3).

This motion resulted from a letter to defendants' counsel from the Government seeking discovery of certain documents. Some of those documents pertained to matters related to the bond issues before the court in these motions, while other documents related to assets that had been liquidated and amounts that had been paid for attorneys, expert witnesses, etc. Since the court has not granted the Government's request for discovery, it considers defendants' motion for a protective order to be moot, and it is denied as such.

## CONCLUSION

For the reasons set out in this Memorandum and Order, the five motions described herein are hereby DENIED, except that the Government is to be provided access by the Clerk of the Court to Doc. No's 341 and 362, both of

which were originally filed as Sealed and *Ex Parte* documents, but both documents are to remain sealed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas, this 6th day of May, 2009.

    s/   DONALD W. BOSTWICK
DONALD W. BOSTWICK
United States Magistrate Judge