# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **SEALED** |
| | ) | |
| Plaintiff, | ) | **Criminal ACTION** |
| | ) | |
| v. | ) | No. 07-10234-MLB |
| | ) | |
| STEPHEN J. SCHNEIDER and LINDA K. SCHNEIDER, a/k/a LINDA ATTERBURY, d/b/a SCHNEDER MEDICAL CLINIC, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case comes before the court on defendants' joint motion for a judgment of acquittal and to strike expert testimony. (Doc. 485). The motion has been fully briefed and is ripe for decision. (Doc. 486). After the submission of this motion, the court instructed an empaneled jury. The jury deliberated for more than one week and returned guilty verdicts as to both defendants on charges of conspiracy, illegal dispensing of prescription drugs, health care fraud and money laundering.

**I.  Analysis**

Pursuant to Fed. R. Crim. P. 29(a), a defendant may move for judgment of acquittal at the end of the government's case-in-chief. Defendants did so in this case and the court orally denied the motion. Rule 29(a) provides that defendants may then choose to rest or offer evidence. If defendants offer evidence, as they did in this case, the court then reviews the entire record in order to determine if there is sufficient evidence for a reasonable jury to find defendants guilty of the crimes charged in the indictment. United States v. Delgado-

Uribe, 363 F.3d 1077, 1083 (10th Cir. 2004). In reviewing the evidence, the court must view all evidence in the light most favorable to the government. United States v. Swanson, 360 F.3d 1155, 1162 (10th Cir. 2004).

**A. Conspiracy**

Count 1 charged defendants with conspiracy. The jury returned a guilty verdict as to count 1 and found that defendants had conspired to commit health care fraud. To prove conspiracy under 18 U.S.C. § 371, the government must prove: 1) defendants agreed to violate the law; 2) one defendant engaged in at least one overt act; 3) defendants knew the essential objective of the conspiracy; 4) defendants knowingly and voluntarily participated; and 5) there was interdependence among the members of the conspiracy. United States v. Rahseparian, 231 F.3d 1267, 1272 (10th Cir. 2000); see also Tenth Circuit Pattern Inst. 2.19. Circumstantial evidence is sufficient to prove a conspiracy. United States v. Pretty, 98 F.3d 1213, 1217 (10th Cir. 1996). Defendants assert that there was no evidence of an agreement and the government "has failed to provide any evidence sufficient to show that unlawful conduct in fact occurred." (Doc. 485 at 2).

The evidence in this case showed that defendants opened a clinic and provided pain management services to more than 5000 patients. Defendants instructed their staff on what charges to bill providers and the codes for those visits regardless of the level of service that was provided. Linda Schneider also instructed staff to falsify charts. The evidence showed that the clinic had a volume based business in which, for example, had patients standing in line at 5

a.m. Large numbers of patients were seen daily. As discussed <u>infra</u>, there was sufficient evidence to show that the clinic consistently billed for services that were not provided and upcoded the majority of claims that were billed. Defendants' expert admitted that certain claims submitted to providers were false. The court finds that there was sufficient circumstantial evidence from which a jury could and did find that defendants agreed to defraud the health care providers and actually committed health care fraud.

**B.  Illegal Dispensing of Prescription Drugs**

Defendants were charged with five counts of illegally dispensing prescription drugs in violation of 21 U.S.C. § 841(a)(1). To find defendants guilty of this crime, the government must establish beyond a reasonable doubt "(1) that the defendant [] dispensed a controlled substance; (2) that the defendant acted knowingly and intentionally; and (3) that the defendant's actions were not for legitimate medical purposes in the usual course of his professional medical practice or were beyond the bounds of medical practice." <u>United States v. Schneider</u>, 594 F.3d 1219, 1226 (10th Cir. 2010).

First, defendants assert that Supreme Court precedent and common law require the mens rea element to apply to all elements, specifically the third element. Defendants, however, do not cite to authority which specifically references section 841. As the court stated during the instruction conference, the Tenth Circuit has held that the mens rea requirement is only applicable to the first element. <u>See</u> <u>United States v. Albert Celio</u>, No. 05-1330, 2007 WL 1241635 (10th Cir. April 30, 2007).

Second, defendants spend time arguing that the statute was not

-3-

intended to criminalize Dr. Schneider's conduct but instead applies to physicians acting in a role as a drug dealer. The court has previously ruled on these arguments and will not do so again. (Doc. 155). The evidence was sufficient for the jury to find that Stephen Schneider, in effect, acted as a prescription drug dealer with a medical degree.

Third, defendants assert that the evidence was not sufficient because the government did not call patient witnesses to discuss the actual treatment. The reason the government did not call the patients listed in counts 2 through 5 is because they are deceased. In Count 6, only eight out of twenty-seven of the individuals referenced are living.[1] The government did, however, present testimony of former patients to discuss Dr. Schneider's treatment. The government also presented testimony from former patients who discussed the clinic and its practices. The government had several experts testify as to whether the prescriptions were legitimate based on the information in defendants' clinical records. Defendants assert that this was not sufficient for a conviction and cites United States v. Tran Trong Cuong, 18 F.3d 1132 (4th Cir. 1994), to support their position.

The Tran case is easily distinguished from the government's presentation of evidence in this case. In Tran, the court discussed the evidence as to the non-testifying patients as follows:

> Dr. MacIntosh [the government's expert] did not mention any of the 20 patients who did not testify, and who at four prescriptions each make up 80 of the counts contained in the indictment. He did not discuss these patients by name nor did he comment on the prescriptions

---

[1] With respect to those individuals, the jury did not return guilty verdicts.

>they had received. He neither examined nor interviewed any of these patients. No effort was made by the prosecution to focus his testimony on any of these 80 counts. In discussing the case of Emily Burns, who testified, Dr. MacIntosh was asked if medications given to this patient were justified. He stated, "This individual case taken by itself could be justified. Taking all the other cases together, and following the pattern that I have been reading for the 16 hours that I read, I wouldn't think it was justified." He was later asked: "Doctor, you have determined and you testified today that the situation with Emily Burns was justified. Can you say that about any other patient here?" The doctor responded: "Well, some of the patients just had a few entries, there were just three or four entries. On that basis, I have no way of judging whether they were valid or not because there was not enough ongoing relationship."

Tran, 18 F.3d at 1141.

In this case, the government experts went through the visits of the patients named in each count, identified the prescriptions issued and stated their opinions as to the appropriateness of the prescriptions for the patient being discussed. The government did not present the evidence in summary fashion. The government experts testified that based on a review of the medical records, the patients' condition and the prescriptions prescribed, that the prescriptions were not prescribed for a legitimate medical purpose in the usual course of medical practice. The witnesses' testimony was methodical and each patient was identified and discussed. All witnesses were subjected to lengthy and vigorous cross-examination. The court finds that a reasonable jury could and did find beyond a reasonable doubt that defendants violated section 841(a)(1).[2]

---

[2] For all guilty verdicts, the patients listed are deceased. Viewed in that light, defendants' argument regarding patient testimony is somewhat baffling. Defendants essentially argue that they should be found not guilty as the patients are not present to testify against them. Taken to its illogical conclusion, this argument would do away with all crimes of murder.

Fourth, Linda Schneider argues that there was not sufficient evidence to find that she aided and abetted Stephen Schneider in violating section 841(a)(1).

> To be liable for aiding and abetting, a defendant must (1) willfully associate himself with the criminal venture, and (2) seek to make the venture succeed through some action of his own. Unlike coconspirator liability, liability as an aider and abetter is not contingent upon a prior agreement or conspiracy to perform a criminal act. Intentionally aiding, counseling, or assisting another in the commission of a crime is all that is required. One need not participate in an important aspect of a crime to be liable as an aider and abetter; participation of relatively slight moment is sufficient. Even mere words or gestures of encouragement constitute affirmative acts capable of rendering one liable under this theory.

United States v. Bowen, 527 F.3d 1065, 1078 (10th Cir. 2008); see also Tenth Circuit Pattern Inst. 2.06.

The evidence in this case pertaining to the prescription practices of the clinic was extensive. Numerous witnesses testified about Linda Schneider's involvement as the clinic manager and the way she handled and instructed the staff. There was sufficient evidence to establish that Linda Schneider required that the pain management patients repeatedly come to clinic to receive their pain medication so that the clinic could receive payments from the providers, not for legitimate medical reasons. Linda Schneider demanded that the refills for prescription be given only during office visits. Without elaboration and limitation, there was sufficient evidence for the jury to conclude that Linda Schneider not only knew about the clinic's dispensing practices, she organized and managed the clinic to maximize the number of prescriptions written and was well aware of the deleterious consequences to patients resulting from the practices. Based on the standard set forth in Bowen, the court finds that there

was sufficient evidence for the jury to find that Linda Schneider aided and abetted Stephen Schneider in illegally dispensing prescription drugs.

Fifth, defendants contend that the government did not establish that the prescriptions issued by Stephen Schneider were a "but for" cause of the patient's death. Section 841(b)(1)(C) states that a defendant found guilty of a violation of section 841(a)(1) will be sentenced to a mandatory minimum of twenty years if "death or serious bodily injury results from the use of such substance." The statute does not define the term "results from." Defendants cite <u>United States v. Hatfield</u>, 591 F.3d 945 (7th Cir. 2010), to support their position for a causation requirement. <u>Hatfield</u>, however, does not support a causation requirement. Rather, the Seventh Circuit reversed the decision of the district court and remanded with explicit instructions to only charge the jury with the language "results from." The court was concerned with the language in the statute and that it may impose strict liability on drug dealers but was also equally concerned with adding a causation requirement that is absent from the statutory language. The undersigned was equally concerned in drafting a causation instruction, given the varying definitions of causation, and therefore determined to instruct in accordance with the statutory language. The court finds that the testimony of the witnesses, including the government's experts[3], on the cause of death was

---

[3] Defendants move to strike the testimony of the government's experts regarding the cause of death of the patients because the experts were testifying based on a "reasonable degree of medical certainty." Defendants, however, offer no authority for their position that medical testimony regarding cause of death must be stated as a beyond all reasonable doubt standard. Defendants' motion

-7-

sufficient for the jury to find beyond a reasonable doubt that Stephen Schneider's prescription practices resulted in the deaths of his patients.

Finally, defendants assert that Jeff H, Katherine S and Randall S were not seen by Stephen Schneider and therefore acquittal is necessary as to those charges. The verdict returned by the jury found both defendants not guilty of the charges with respect to those individuals. Therefore, the argument is moot.[4] Defendants further contend that they should be acquitted of illegal prescription practice with respect to several individuals that Stephen Schneider did not see on their last visit to the clinic. As to the individuals listed in count 6, this argument is moot because the only patient the jury found to have been illegally prescribed prescription drugs was Patricia C. Stephen Schneider did see Patricia C on her last visit to the clinic.

As to the remaining individuals, Kandace B, Dalene C, Pamela F, Victor J, Jeffrey J, Heather M, Jo Jo R, Evelyn S, and Patsy W, the jury found defendants guilty of illegally prescribing prescription drugs to seven of those individuals. The jury further found that only Kandace B and Jo Jo R's death resulted from the use of the prescription drugs. While Stephen Schneider may not have been the provider seen on the last visit, the evidence clearly supported a finding that Stephen Schneider illegally prescribed prescription medications to those individuals on several occasions. The indictment did not solely charge defendants with the conduct related to the last

---

to strike the testimony is denied.

[4] This is but one example of the thoroughness of the jury in examining the evidence and in following the instructions

visit for all of the listed individuals.

The court finds that the evidence, viewed in a light most favorable to the government, was sufficient for a jury to find beyond a reasonable doubt that defendants illegally dispensed prescription drugs.

**C.    Health Care Fraud**

The jury found defendants guilty of all charges of health care fraud. For defendants to be found guilty of health care fraud, the government must prove the following beyond a reasonable doubt: 1) defendants "knowingly and willfully devised or participated in a scheme to defraud a health care benefit program;" 2) the statements made in connection with the scheme were material; 3) defendants acted with intent to defraud; and 4) the scheme involved the payment for health care services. United States v. Awad, 551 F.3d 930, 939 (9th Cir. 2009).

First, defendants assert that the prescriptions were issued for legitimate purposes. As discussed, there was sufficient evidence for the jury to find that the prescriptions were not issued for a legitimate purpose. Moreover, all experts, including defendant's coding expert, testified that billed visits for prescription refills which are not issued for legitimate purposes are false claims.

Second, defendants assert that they should be acquitted on the Actiq counts, 10 through 12, because there is no evidence of a material misrepresentation and the issuance of Actiq for non-cancer pain is supported in medical literature. The government's experts testified that the prescription of Actiq for the listed individuals was not for a legitimate purpose and outside the scope of medical

practice.  All experts testified that a visit in which a prescription was issued for a non-legitimate purpose resulted in a false claim being submitted to the providers.  While the jury was presented with testimony that the off label prescribing of Actiq was appropriate, the verdict reflects the jury's contrary decision, which clearly is supported by the evidence.  Therefore, sufficient evidence was presented to establish that defendants committed health care fraud by billing for visits in which prescriptions were issued for non-legitimate medical purposes.

Defendants final point is essentially that there was not sufficient evidence that defendants committed health care fraud as charged in counts 13 through 17.  For these counts, the government presented testimony from expert witnesses.  Those witnesses carefully examined a random sample of claims submitted by defendants.  The experts concluded that defendants submitted false claims on several hundred occasions.  The false claims included billing for a physician when in fact the patient was seen by a physician's assistant, billing for services not provided and upcoding the level of service.  The government introduced a significant amount of evidence to support those claims.  Witnesses testified that defendants instructed their staff on which code to bill for services regardless of the standard requirements on each code. Witnesses also testified that charts were falsified.  Once again, cross-examination was extensive.

The court finds that there was sufficient evidence for a jury to find beyond a reasonable doubt defendants guilty of health care fraud.

**D. Money Laundering**

As to the money laundering charges, defendants simply make a

throw-away argument that the underlying conduct was not illegal. Because the court determined that the jury could reasonably conclude that defendants engaged in illegal conduct, the court further finds that it was reasonable for the jury to find beyond a reasonable doubt that defendants were guilty of money laundering for their activities with funds derived from the clinic.

**II.  Conclusion**

Defendants' joint motion for acquittal is denied.  (Doc. 485).

IT IS SO ORDERED.

Dated this   30th   day of June 2010, at Wichita, Kansas.

s/ Monti Belot  
Monti L. Belot  
UNITED STATES DISTRICT JUDGE