**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STEPHEN J. SCHNEIDER and LINDA K. ) <br> SCHNEIDER, a/k/a LINDA ATTERBURY, ) <br> d/b/a SCHNEDER MEDICAL CLINIC, ) <br> ) <br> Defendant. ) <br>  ) | **Criminal ACTION** <br><br> No. 07-10234-MLB |

**MEMORANDUM AND ORDER**

This case comes before the court on defendants' joint motion for judgment of acquittal and a new trial. (Doc. 505). The motion is fully briefed and ripe for decision.[1] (Docs. 508). Defendants' motion is denied for the reasons herein.

Defendants were charged with conspiracy, illegal dispensing of prescription drugs, health care fraud and money laundering. The jury entered guilty verdicts on the majority of the charges. (Docs. 493, 494, 495). Prior to the verdict, defendants moved for acquittal. (Doc. 485). The court denied the motion after the return of the jury's verdicts. (Doc. 497). Defendants now renew their motion for acquittal and, in the alternative, seek a new trial.

Before proceeding, it is appropriate to put the motions in perspective. The evidentiary portion of the trial, including jury selection, lasted seven weeks. Approximately ninety witnesses testified, including many experts. The jury deliberated for seven

---

[1] Defendants informed the court that they were not filing a reply.

days.  Defendants were found guilty on many, but not all, counts. Clearly the jury did its job.

**I. Analysis**

As to defendants' motion for judgment of acquittal, the court must uphold the jury's verdict of guilty if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Haber, 251 F.3d 881, 887 (10th Cir. 2001). The court "must ask only whether taking the evidence-both direct and circumstantial, together with the reasonable inferences to be drawn therefrom-in the light most favorable to the government, a reasonable jury could find [defendants] guilty beyond a reasonable doubt." United States v. Magleby, 241 F.3d 1306, 1311 (10th Cir. 2001) (quoting United States v. Springfield, 196 F.3d 1180, 1184 (10th Cir. 1999)). "Furthermore, the evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." Id.

As to defendants' motion for a new trial, Federal Rule of Criminal Procedure 33 provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." "A motion for new trial under [Rule] 33 is not regarded with favor and should be granted only with great caution." United States v. Custodio, 141 F.3d 965, 966 (10th Cir. 1998). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. United States v. Stevens, 978 F.2d 565, 570 (10th Cir. 1992).

**A. Jury Instructions**

Defendants first attack a variety of instructions given to the

jury.  The court will address each argument in turn.[2]

## Illegal Dispensing of Prescription Drugs

As to the substantive instruction pertaining to the section 841 counts, defendants argue that the jury was improperly instructed to only consider whether Stephen Schneider acted knowingly and intentionally in dispensing prescription drugs.  Defendants assert that the mental requirement should have also applied to the third element, i.e. whether Stephen Schneider's actions were not for legitimate medical purposes.  In support of their position, defendants cite cases which do not discuss section 841 and the mens rea requirement.  As the court has stated in its recent ruling and on the bench, the Tenth Circuit has held that the mens rea element does not apply to the third element.  See United States v. Celio, No. 05-1330, 2007 WL 1241635 (10th Cir. April 30, 2007).  Therefore, the court's instruction was proper.

Next, defendants assert that the court erred in failing to instruct that the Controlled Substances Act is meant to criminalize "illicit drug dealing as conventionally understood," citing Gonzales v. Oregon, 546 U.S. 243 (2006).  There is no indication, however, that the language cited by defendants in Gonzalez was intended to modify the elements of the crime as stated in the statute.  The court has previously and extensively ruled on these arguments and will not do so again.  (Doc. 155).

---

[2] The court conducted a lengthy instruction conference which has yet to be transcribed.  Without a transcript, the court cannot be certain that each instruction to which defendants now object was objected to at the instructions conference.  Each proposed, requested and objected-to instruction was thoroughly discussed and considered.

### Good Faith Instruction

Defendants argue that the good faith instruction pertaining specifically to the section 841 courts was erroneous because the court used the language "good professional judgment" instead of simply stating "professional judgment." Defendants claim that this language is contrary to Gonzales but then fail to cite to a specific holding in the case. The Gonzales case did not discuss jury instructions. Moreover, the Tenth Circuit has cited with approval the exact language the court used in the good faith instruction. Celio, 2007 WL 1241635, *5-6.

### Causation Instruction

Defendants contend the court erred in failing to define the phrase "results in death." Defendants argue that the court should have instructed the jury that defendants' conduct must have caused the patients' deaths. In support of their position, defendants cite United States v. Hatfield, 591 F.3d 945 (7th Cir. 2010). The Seventh Circuit, however, reversed Hatfield's conviction after determining that the trial court erroneously attempted to define the statutory term "results in." The Seventh Circuit's opinion does not support a conclusion that the court should instruct on causation. In fact, the opinion strongly suggests that the court should adhere to using only the statutory language as the court did in this case.

### Aiding and Abetting Instruction

Defendants assert that the court erred in failing to specifically instruct that Linda Schneider had to have knowledge and intent as to each specific patient. The court's instruction was as follows for the crime of aiding and abetting:

Counts 2 through 34 of the indictment each charge an additional violation of 18 U.S.C. section 2, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." This law makes it a crime to intentionally help someone else commit a crime. Aiding and abetting is a different crime from conspiracy.

To find defendant Linda Schneider guilty of aiding and abetting, you must be convinced that the government has proved both of the following essential elements beyond a reasonable doubt:

First: defendant Stephen Schneider committed the charged crime or crimes, and

Second: defendant Linda Schneider intentionally associated herself in some way with the crime or crimes and intentionally participated therein as she would in something she wished to bring about. This means that the government must prove that Linda Schneider consciously shared Stephen Schneider's knowledge of the underlying criminal acts and intended to help him.

To find defendant Stephen Schneider guilty of aiding and abetting, you must be convinced that the government has proved both of the following essential elements beyond a reasonable doubt:

First: defendant Linda Schneider committed the charged crime or crimes, and

Second: defendant Stephen Schneider intentionally associated himself in some way with the crime or crimes and intentionally participated therein as he would in something he wished to bring about. This means that the government must prove that Stephen Schneider consciously shared Linda Schneider's knowledge of the underlying criminal acts and intended to help her.

To be guilty of aiding and abetting, a defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene and knowledge that a crime is being committed also is not sufficient to establish aiding and abetting.

Instr. No. 15; see also Tenth Circuit Pattern Inst. 2.06.

The court then instructed the following on Count 5[3]:

---

[3] The indictment charged defendants as follows in count 5:
From in or about January 2002, and continuing through in or about July 2007, within the District of Kansas, in furtherance of their conspiracy and scheme, the defendants [] not for a legitimate medical

> To find Stephen Schneider guilty of the crime charged in count 5 you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:
> First: Stephen Schneider dispensed Schedule 2, 3 and/or 4 controlled substances to one or more of the specific individuals named in Count 5;
> Second: Stephen Schneider acted knowingly and intentionally; and
> Third: Stephen Schneider's actions were not for legitimate medical purposes in the usual course of professional medical practice or were beyond the bounds of medical practice.
> In order to find Linda Schneider guilty of count 5, you must find that she aided and abetted Stephen Schneider.

Instr. No. 23.

The instruction as to count 6[4] also listed the elements set forth in instruction number 23 and then specifically charged the jury with the task of determining whether Linda Schneider aided and abetted Stephen Schneider. In addition to these instructions, the jury was given a verdict form for each defendant. The verdict form required the jury to answer whether Linda Schneider aided and abetted Stephen Schneider as to each patient listed in counts 5 and 6. While the court's instructions did not separately state the elements as to each

---

purpose and outside the usual course of professional medical practice, did knowingly and intentionally distribute and dispense, and caused to be distributed and dispensed, Schedule 2, 3 and 4 controlled substances to at least [18] individuals, which resulted in their serious bodily injuries and deaths.
(Doc. 414 at 39-40)(omitted the specific individuals named).

[4] The indictment charged defendants as follows in count 6:
From in or about January 2002, and continuing through at least in or about January 2008, within the District of Kansas, in furtherance of their conspiracy and scheme, the defendants, not for a legitimate medical purpose and outside the usual course of professional medical practice, did knowingly and intentionally distribute and dispense, and caused to be distributed and dispensed, Schedule 2, 3 and 4 controlled substances to at least the 27 below-listed individuals, including three identified minors. Of the 27 below-listed individuals, 19 eventually died of drug overdoses on the dates indicated.
(Doc. 414 at 41-42)(omitted the specific individuals named).

-6-

patient for counts 5 and 6, the verdict form was sufficient to apprise the jury of its duty prior to finding Linda Schneider guilty of those charges. The language in the verdict form reminded the jury to answer affirmatively only if it found that Linda Schneider aided and abetted Stephen Schneider.

**Scheme to Defraud**

Next, defendants contend that the definition of the words "scheme to defraud" and "artifice to defraud," as "any plan, pattern or course of action intended to deceive others in order to obtain something of value, such as money, from the program or person to be deceived," (Instr. No. 30), was erroneous because it allowed the jury to find that a "mere pattern was sufficient to prove fraud." (Doc. 505 at 12). Defendants do not cite any authority for the position that a scheme or artifice to defraud cannot include a pattern. Rather, they cite to the Tenth Circuit Pattern Instruction 2.56, the model instruction for mail fraud. While admittedly that instruction does not use the term pattern, the Tenth Circuit does define a scheme or artifice to defraud as a pattern in its instruction for bank fraud. See Tenth Circuit Pattern Inst. 2.58. The Tenth Circuit has also repeatedly held that a scheme or artifice to defraud includes a pattern. See, e.g., United States v. Stewart, 872 F.2d 957, 959 (10th Cir. 1989).

Moreover, the court's instruction could not have allowed the jury to conclude that "unintentional mistakes" amounted to health care fraud based on the sole inclusion of the word pattern in the definitions. The court's instructions clearly stated that defendants' actions must have been intentional and they must have acted knowingly

-7-

and willfully in deceiving the health care programs.

## Instruction Regarding Insurance Contracts

Finally, defendants argue that the court committed error in failing to instruct the jury on their defense that a "contract or form signed in the course of doing business with a health care benefit provider cannot substitute for the statutory elements of knowledge and willfulness." (Doc. 505 at 12-13). First, and importantly, defendants never submitted a proposed instruction on their theory of defense.[5] While defendants cite to docket entry 483, that document merely argues that a cautionary instruction should be given but defendants do not attach a proposed instruction. Defendants submitted numerous proposed instructions in this case and the court gave them sufficient time to submit additional instructions. Therefore, the court is unclear as to exactly what the proposed cautionary instruction would have stated.

Nevertheless, the court finds that its instructions on health care fraud sufficiently instructed the jury that in order to reach a guilty verdict defendants must have knowingly and willfully executed or attempted to execute a scheme to defraud. The "government was

---

[5] The court was and remains somewhat uncertain as to the nature of defendants' "theory of defense" claim of error. The court understood one "theory" was that they acted in good faith and two good faith instructions were given (numbers 27 and 43). The court also understood that defendants were anxious for the jury to understand their position that this was not a medical negligence or malpractice case and the court instructed the jury accordingly (number 51). Certainly defendants' overriding theory was that the government's evidence failed to show beyond a reasonable doubt that they committed any crimes. The instructions were replete with directions regarding the government's burden. The fact that the jury declined to convict on certain counts clearly shows that the jurors followed the instructions in considering the evidence, as they are presumed to do.

required to show, and did show, that [defendants] violated the statutes listed in the indictment, not the provisions of the [contract.]" United States v. Lawrence, 405 F.3d 888, 897 (10th Cir. 2005). Moreover, after the introduction of the contracts and the language therein the court instructed the jury that it would receive instructions from the court on the law applicable to the charges. Therefore, any instruction regarding the contracts was not necessary and may have caused confusion. Id.

**Conclusion**

The court finds that its sixty-one instructions on the law applicable in this case, viewed in their entirety, were correct statements of the law and sufficiently apprised the jury.

**B.  Expert Testimony**

Defendants argue that the opinions offered by the government's experts on the cause of the patients' deaths were inadmissible because they failed to meet the reliability requirements under Fed. R. Evid. 702. The court has already addressed defendants' arguments in prior orders and does not see the need to revisit those rulings. (Docs. 209, 226).

Defendants also challenge the testimony of the death experts on the basis that they failed to do hair testing at the time of the autopsy. The government's experts testified that hair testing was extremely expensive and not utilized in cases such as these patients' deaths. Even Dr. Karch, defendants' "expert," admitted that doing hair testing on the patients in this case would deplete the entire budget of the Sedgwick County Forensic Office. Nevertheless, this argument goes to the weight of the experts' testimony and not its

reliability.  The jury was free to decide to believe the government witnesses or Dr. Karch.[6]

Defendants contend that the government's death experts' opinions were not reliable because they could not rule out other causes of death beyond a reasonable doubt but instead used the phrase "to a reasonable degree of medical certainty."  The only case cited by defendants to support their position is McIver v. United States, No. 08-70057 (D.S.C. 2010).  In McIver, the district judge found the defendant's trial counsel ineffective for failing to obtain an expert to opine about the cause of death based on the affidavits presented by two experts who opined that there were significant health concerns with the patient who allegedly died from a prescription drug overdose.[7]  Contrary to defendants' position, McIver does not support the conclusion that a medical examiner cannot state a cause of death to a reasonable degree of medical certainty in a criminal case.

As to the government's pain treatment experts, defendants argue that their opinions on the ultimate issue of whether Stephen Schneider's conduct was "outside the course of professional practice" and "not for a medical purpose" violated Fed. R. Evid. 704(b).  Rule

---

[6] The jury was free to conclude that Karch was merely "an expert in his own mind," a charlatan pure and simple.  This court has grown accustomed to, if not accepting of, professional witnesses.  Karch, who charged much but prepared little for his testimony, is a prime example of the witness who, if nothing else, knows how to "dance with the one who brung ya."

[7] Defendants' parenthetical to this case states that the opinion relied "in part on text of Dr. Karch."  (Doc. 505 at 6).  While the opinion does cite the text as one of eleven exhibits submitted by the movant, the opinion does not state that the decision to grant the movant's § 2255 motion was made after a review of Dr. Karch's text.  Rather, the opinion focuses on the affidavit of two experts.

-10-

704(b) does not allow an expert witness to testify with respect to a mental state or condition of a defendant. The experts' opinions on the treatment of the Schneider patients were based on the review of the medical records alone. No expert was allowed to offer an opinion on defendants' mental states. Therefore, the experts' testimony does not violate Rule 704(b). Furthermore, several circuits have allowed experts to opine as to whether a defendant's conduct was outside the course of professional practice and not for a legitimate medical purpose. See, e.g. United States v. Varma, 691 F.2d 460 (10th Cir. 1982); United States v. Chube II, 538 F.3d 693, 697 (7th Cir 2008); United States v. McIver, 470 F.3d 550, 556 (4th Cir. 2006). The cases cited by defendants are not applicable.

Therefore, the court finds that the government's experts' testimony was properly admitted during trial.

**C.  Bifurcation**

Defendants present no new argument or authority on the bifurcation of the death issues from the guilt phase of the trial. Therefore, the court will not revisit those arguments. See Doc. 462.

**D.  Insufficient Evidence**[8]

Linda Schneider asserts that a new trial is required on counts 2 though 6 because a reasonable trier of fact could not have found her guilty of aiding and abetting in the illegal dispensing of

---

[8] In this new motion, the only specific arguments made regarding the sufficiency of the evidence pertain to Linda Schneider's convictions on counts 2-9. Defendants generally reference the previous arguments made in their joint motion for acquittal filed at the close of the evidence. (Doc. 485). For the reasons stated in this court's memorandum and order of June 30, 2010, the court finds that the evidence at trial was sufficient for a reasonable jury to find defendants guilty of the charges. (Doc. 498).

prescription drugs by Stephen Schneider.  In its prior order, the court discussed the sufficiency of the evidence against Linda Schneider and will not revisit the issue except to say that on the entirety of the evidence presented, the jury was entitled to conclude that Linda Schneider was the chief architect of defendants' criminal conduct.  (Doc. 498 at 6-7).

Other circuits have previously upheld convictions of clinic managers who aided and abetted the physician in dispensing prescription medications.  United States v. Johnson, 831 F.2d 124, 128-129 (6th Cir. 1987); United States v. Mahar, 801 F.2d 1477, 1480, 1487 (6th Cir. 1986) (rejecting challenge to the sufficiency of the evidence to convict medical clinic owner/president/manager under CSA for drug conspiracy); United States v. Vamos, 797 F.2d 1146, 1151-54 (2d Cir. 1986)(affirming nurse/office manager's conviction for aiding and abetting the distribution of controlled substances outside the scope of professional medical practice under the CSA).

Linda Schneider also asserts that there was insufficient evidence to find that the health insurance fraud in counts 7 through 9 resulted in the death of those three patients identified in those counts. Again, the court has already determined that extensive evidence was presented as to the health insurance fraud perpetrated by defendants at the clinic.  There was also extensive testimony regarding the patient deaths as a result of the clinic practices.  Therefore, the court finds that a reasonable jury could have determined that the illegal health care fraud resulted in the deaths of the three patients listed in counts 7 through 9.

**E.    Prosecutorial Misconduct**

Finally, defendants argue that the court should order a new trial because of the government's alleged prosecutorial misconduct. Defendants refer to arguments previously made (Doc. 409) and rejected by the court (Doc. 436). The court declines to revisit the issues raised in defendants' previous motion.

Defendants also point to two statements made by the prosecutor in closing.[9] First, the prosecutor made the comment that a reasonable degree of medical certainty is a higher standard than beyond a reasonable doubt. Second, the prosecutor referenced a male confidential informant in closing and defendants believe the statement amounted to misconduct because the disclosures supposedly provided by the government to defendants prior to trial only referenced a female confidential informant.

In response, the prosecutor insists that the comment regarding the degree of medical certainty was made only after repeated questions to the government's experts on cross. The government's experts believed that their standard of a reasonable degree of medical certainty is higher than beyond a reasonable doubt. The prosecutor also states that the comment regarding the agent was based on testimony of a former employee who stated that she had ran off a male KBI agent.

In reviewing claims of misconduct at trial, the court must first determine whether the "conduct was in fact improper. If the conduct was improper, [the court] must then determine whether it warrants

---

[9] The court's recollection is that the closing arguments lasted somewhere around five to six hours. Without a transcript the court cannot recall whether defendants objected to the prosecutor's statements.

-13-

reversal." United States v. Harlow, 444 F.3d 1255, 1265 (10th Cir. 2006). The court does not believe that the statements made during closing by the prosecutor were improper. Even if the court did believe that the statements were improper, the court would not conclude that those statements warranted a new trial. The court properly instructed the jury on the law in this case and firmly believes that the jury cautiously weighed all of the evidence in reaching its verdicts. It is inconceivable that the jury's verdicts were somehow improperly influenced by the prosecutor's arguments.

## II. Conclusion

The court finds that there was sufficient evidence to find defendants guilty of the charges as set forth in the verdicts. The court further finds that defendants failed to establish the existence of errors in the instructions and/or the evidence received at trial.

Defendants' motion for acquittal and/or a new trial is denied. (Doc. 505).

IT IS SO ORDERED.

Dated this ___17th___ day of August 2010, at Wichita, Kansas.

s/ Monti Belot  
Monti L. Belot  
UNITED STATES DISTRICT JUDGE