**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
WICHITA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | Case No. 07-10234 MLB |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHEN J. SCHNEIDER, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**DEFENDANTS STEPHEN J. SCHNEIDER AND LINDA K. ATTERBURY'S
SENTENCING MEMORANDUM AND
REQUEST FOR DOWNWARD DEPARTURE**

Defendants respectfully submit this memorandum to the Court to aid the Court in considering the factors set forth in 18 U.S.C. § 3553. For the reasons discussed below, the defendants submit that a below-guidelines sentence is appropriate in this case.

In light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Court is not bound to sentence the defendants in accordance with the Sentencing Guidelines.[1] Rather, the Court has some flexibility in determining the sentence, and must consider the circumstances of the specific case before it. The Supreme Court has held that the guidelines merely provide an "initial bench mark" or "starting point" in the sentencing process, *Gall v. United States*, 128 S.Ct. 586, 596 (2007), and the Tenth Circuit has repeatedly upheld below-guidelines sentences. *See, e.g.*, *United States v. Munoz-Nava*, 524 F. 3d 1137 (10th Cir. 2008); *United States v. Sayad*, 589 F.3d 1110 (10th Cir. 2009); see also *United States v. Moore*, 129 S.

---

[1] The defendants have separately stated their objections to the guidelines calculations in the PSR, and fully incorporate those objections herein.

1

Ct. 4 (2008) (remanding and reversing sentence where court failed to consider below-guidelines sentence).

In determining the sentence that should be imposed, the Court must consider the factors set forth in 18 U.S.C. § 3553. See *United States v. Serrano*, 2010 U.S. App. LEXIS 19406 (10th Cir., Sept. 17, 2010) (A court may commit procedural error in imposing a sentence by "failing to calculate (or improperly calculating) the Guideline range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.") (citing *Gall,* 552 U.S. at 51). 18 U.S.C. § 3553(a) requires that the Court impose a sentence that is "sufficient, but not greater than necessary" to fulfill the aims of the factors that are set forth.

In light of these requirements, the defendants respectfully submit this memorandum, which addresses the various sentencing factors that should be considered in this case. The defendants submit that in light of the factors, they should receive a sentence that is below the guidelines range referenced in the PSR.

**1. History and Characteristics of defendants**

A. Stephen

Dr. Stephen Schneider was born and raised in Wichita, Kansas. Dr. Schneider has two brothers and two sisters. Dr. Schneider also has three children ranging in ages 17-34. This includes two adopted daughters that lived in Romania.

Additionally, Dr. Schneider was on pretrial release for nearly two years. Moreover, he accepted multiple positions in order to provide for his family during this time period. Lastly, despite the government's contentions, Dr. Schneider never made any attempts whatsoever to flee the jurisdiction and attended each and every court hearing and trial day that he was required to

attend.

B. Linda

Linda K. Atterbury is a lifelong resident of Wichita. Much of her personal history is accurately revealed in the PSR. However, some significant history and characteristics are omitted. Linda and Steve adopted two Romanian infant girls over fifteen years ago. Linda traveled extensively alone in the chaotic and dangerous Baltic region in order to locate and rescue these two children. Gina and Zoe have since matured into marvelous young women, aged 18 and 17. When these little babies were relocated to Wichita, they were essentially wild animals that had been chained to their cribs in the orphanage. Through perserverant love and discipline, Steve and Linda raised them to be solid citizens who will contribute gainfully to society.

It is also important for the Court to realize that Linda consistently held menial, low-paying jobs while she was free on bond. She went from overseeing a busy medical clinic and being known as "the doctor's wife," to selling trinkets at a kiosk in the mall. Her work ethic is unquestioned and Linda has certainly exhibited humbleness and humility in facing the tribulations of being a notorious criminal defendant.

Linda never violated pretrial services restrictions and she never missed a court date or obligation. Her conduct has been beyond reproach during the pendency of this case. She never asked for special accommodations and rarely left her house except to work, attend Mass, and visit her parents around the corner. The government assertions that she would flee, or hurt witnesses (or the prosecutor, or a prior defense attorney) obviously worked to keep her in custody for fourteen months, but were otherwise nothing but hyperbolic rantings.

**2.      Nature and Circumstances of the Offense**

Many of the counts of which the defendants were convicted, and which prescribe the most severe guidelines sentences in this case, are based on 21 U.S.C. § 841(a)(1). This is the same law that applies to street-level drug dealers who sell drugs such as heroin and crack cocaine.[2] It is not difficult to see the enormous difference between the conduct of such offenders, and that of the defendants in this case.

As the Court well knows, the defendants operated a medical clinic that treated a large number of patients. The clinic was a state-of-the-art facility which cost millions of dollars to construct and which was highly visible. In the course of treating patients, Dr. Schneider and other providers at the clinic prescribed controlled substances to a subset of the patient population who presented with painful conditions, or purported to suffer from pain but indeed were dishonest and duped Dr. Schneider and other providers. The evidence at trial showed that most if not all of these patients had medical conditions that required pain treatment, or that at the very least Dr. Schneider believed that these patients had conditions that required pain relief. Several of the witnesses called both by the government, as well as the defense, believed Dr. Schneider was sincerely attempting to help their family members. The government also did not appear to deny at trial that a large part of the patient population in fact received legitimate treatment. Several of the witnesses presented by the government conceded that they lied to Dr. Schneider and other providers in order to obtain controlled substances, and in some cases concealed the fact that they had visited multiple other doctors to obtain drugs. The evidence also showed that Dr.

---

[2] The same conduct also forms the basis for the health care fraud convictions on Counts 7-9.

4

Schneider and others dismissed many patients whom they discovered were not following instructions or were abusing their medications.³

The evidence at trial focused on Dr. Schneider's (and other providers') treatment of a number of patients who constituted a small fraction of the 10,000-plus patient population, and focused on his medical decision-making as to these patients. While mistakes were undoubtedly made in treating these patients, the government did not present a single case in which Dr. Schneider knowingly and intentionally prescribed to a patient whom he did not believe (however erroneously) needed the medication because of an existing painful condition.

Linda Schneider was found guilty only of aiding and abetting the drug-dealing offenses and did not have any knowledge or carry out any decisions with respect to the course of treatment of the specific patients named in the indictment. She indisputably did not provide controlled substances to *any* patient.

The nature and circumstances of this case stand in stark contrast to the conduct contemplated in 21 U.S.C. § 841 and the related Sentencing Guideline, which are intended to punish drug-dealers who traffic in substances such as heroin and crack cocaine on the street -- substances that have no recognized medical purpose. Plainly, this type of conduct is a far cry from the acts at issue here, and treating the defendants similarly to run-of-the-mill drug dealers would result in an excessive and unfair punishment.

The conduct at issue in this case is also distinguishable from other cases involving medical practitioners and drugs, including those from the Tenth Circuit. Unlike some of those cases, this case does **not** involve charges of sex for drugs, *see, e.g.*, *United States v. Jamieson, 806 F.2d 949, 950-51 (10th Cir. 1986)*; charges that Dr. Schneider prescribed

---

³ There was evidence that over 900 pain patients were dismissed for non-compliant behavior.

drugs to individuals who were never patients of the clinic or outside of the clinic, see, e.g., *United States v. Smurthwaite*, 590 F.2d 889, 890-91 (10th Cir. 1979) (physician prescribed amphetamines to undercover agents with no physical exam or medical history, wrote prescriptions for purported wives of undercover agents, who were not present, physician indicated he knew prescriptions were used for "parties," issued prescriptions for weight loss to undercover agents who obviously had no medical need for it); charges that Dr. Schneider did not even ask patients about their medical condition or the cause of their pain, *see, e.g., States v. Bartee*, 479 F.2d 484, 489 (10th Cir. 1973), or that he required cash payments for prescriptions so as to avoid detection, see, e.g., *United States v. Hoffner*, 777 F.2d 1423 (10th Cir. 1985). Rather, as discussed above, the evidence in the case was focused on Dr. Schneider's decision-making, and his very own patients files were extensively relied upon by both sides at trial.

In light of the conduct and the evidence, the defendants' intent should be given significant consideration. Although the Court has held the evidence sufficient in this case to support an offense under 21 U.S.C. § 841, the defendants' underlying intent is nevertheless an important factor to revisit in determining their degree of culpability and the appropriate sentence. In *United States v. Mahan*, 232 Fed. Appx. 796, 799 (10th Cir. Colo. 2007), the Tenth Circuit reversed a sentence for the strict liability offense of felon in possession of a firearm where the sentencing court refused to consider the defendant's intent to possess the firearm. The Tenth Circuit held that while it was not an element of proof, the defendant's intent was important in determining his culpability in order to impose a sentence. *Id.* Ultimately, the evidence at trial in this case was that, however inadequate or even dangerous, Dr. Schneider at all times was attempting to provide medical treatment to his patients.

6

The defendants' intent and conduct is similarly important to consider with respect to the health care fraud counts based on billing. Some of the counts were based on conduct that was completely out in the open – e.g., billing insurance companies for Actiq prescriptions (counts 10-12).[4] The evidence presented as to the other counts – those based on billing (counts 13-17) showed that much of the charged fraud was based on mistakes made throughout the clinic and particularly in the billing department as a result of not knowing the specific rules of particular insurance companies or general sloppiness. Indeed, the government argued several times that knowledge was "imputed" by contracts with the insurance companies, and the "if you collected the money you are responsible." Setting aside the legal objections to this position, it certainly tells a great deal about the defendants' level of knowledge and intent.

The sentencing decision of Judge Crow in *United States v. Cooper*, No. 02-40069-01/02/03-SAC (D. Kan. Jan. 24, 2006), *2006 U.S. Dist. LEXIS 2582,* while not binding on the Court, contains an illuminatingly thoughtful analysis under the "nature and circumstances" factor which is particularly pertinent here because the nature of the business and the fraud allegations in that case closely mirror this one.

There, the defendants were charged with overbilling insurance companies for certain medical products, including wheelchairs. In considering the nature and circumstances of the offense, Judge Crow relied on several factors that are present in this case and that the Court found were not indicative of a typical fraud scheme, including:

A. The defendants started their business where they were raised and lived, *id.* at 80;

B. The defendants hired some employees who were experienced in their field, *id.* at 29;

---

[4] Indeed, the evidence as trial showed that when one company, First Guard, indicated that Actiq was not covered for certain conditions, the clinic stopped prescribing that drug to First Guard patients. Never did the clinic attempt to create false diagnoses to justify reimbursement for Actiq prescriptions.

7

C. The defendant hired their family members to work for them, *id*. at 29;
E. 81
G. .
I.
K.
M. Their business practices lacked a "surreptitious, transient and suspicious" character, *id.;*

N. The medical regulations at issue were "complex, confusing, and arguably incoherent at times" and, as such, were "a contributing factor to the grey areas in compliance and reimbursement and, more importantly, a relevant context in which to evaluate the defendants' knowledge and understanding of their business, the motives behind their initial business decisions, and the seriousness of their criminal activity." *Id.* at 82.

On the basis of these factors, the court concluded that the defendants' lack of knowledge and experience in the field caused them to make errors, and even though they did not subsequently correct those errors when they became apparent, the guidelines sentence "overstate[d] the seriousness of the defendants' criminal intent and offenses and that the sentence should be accordingly fashioned to reflect these [mitigating] circumstances." *Id*. at 83-84. The very same factors are present in this case.

Both as to and the prescribing conduct and the billing, the defendants submit that the concept of marginal deterrence should inform the Court's decision. The Seventh Circuit has explained that concept as follows: "the harshest sentences should be reserved for the most culpable behavior." *United States v. Newsom*, 402 F.3d 780, 786 (7th Cir. Ind. 2005). For the reasons discussed, the defendants' conduct does not merit life sentences.

**3.     The need for deterrence and to protect the public**

Imposition of the guidelines sentence in this case will not serve the goal of deterring either defendant, nor to protect the public. The acts that form the basis of conviction in this case occurred in the context of the Schneider Medical Clinic. Dr. Schneider has lost his medical license, and the clinic no longer exists. The defendants will never again have the ability to see

8

patients or to prescribe controlled substances. Indeed, Magistrate Judge Bostwick recognized this when he released Dr. Schneider on bond.[5]

Specifically with respect to Linda Schneider, there is no serious argument that she poses a threat to any individual, in particular the prosecutor or John Rapp, as the government suggests.[6] Although this was an argument that the government relied on to keep Linda Schneider incarcerated pre-trial, the Court implicitly rejected this argument by allowing Linda Schneider to be released on conditions. It is significant that Linda Schneider did not violate her conditions of release, let alone attempting to harm the prosecutor or any other individual. And of course, she learned to refrain from blurting out any additional flippant remarks during the extensive eavesdropping and surveillance campaign engaged in by the government.

The government argues that life sentences will serve a general deterrence function by discouraging practitioners from "cutting corners" for financial gain.[7] Gov't. br. at 31. The government fails to consider that little if no deterrent effect is plausibly gained by the difference between a 20-year sentence and a life sentence. The government also fails to consider the

---

[5] The defendants are both over fifty years of age. The Sentencing Commission has conducted a study which shows that the likelihood of recidivism declines sharply with the age of the defendants. U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* at 12 (available at http://www.ussc.gov/publicatl Recidivism_General.pdf); *See also United States v. Carmona-Rodriguez,* No. 04 Cr. 667 (RWS), *2005 U.S. Dist. LEXIS 6254* (S.D.N.Y. April 11, 2005) (imposing a non-Guidelines sentence on a 54-year-old woman where, *inter alia*, there was a low probability of recidivism).

[6] The supposed threats were in the form of two flippant remarks on a jailhouse telephone line that was knowingly monitored. It is classic overkill for the government to suggest that: 1) Frustration at an attorney's refusal to communicate with his client, or: 2) That a prosecutor was making a defendant's life "miserable," is evidence of threatening those actors.

[7] The "cutting corners" theory as an aggravating circumstance is peculiarly ironic given the fact that the government's total case was premised upon cutting corners, ie., relying exclusively on private insurance companies for the billing and reimbursement component as well as the government's extreme reliance on charts, summaries, graphs, and witnesses without foundational personal knowledge in support of their testimony.

*negative* consequences of sentences that are too severe – namely, that practitioners will refuse to prescribe controlled substances to people whom they believe need them for fear of being severely punished should it turn out that those people are not being truthful with them.[8] In other words, unduly harsh sentences are likely to discourage those doctors who want to treat patients but who are afraid that their patients will mislead them or not use their medications as directed. This is especially true because there is no definitive test for what conduct falls "outside the course of professional practice" when it comes to prescribing opioids. *See, e.g.*, *United States v. August*, 984 F.2d 705, 713 (6th Cir. 1992) ("[t]here are no specific guidelines concerning what is required to support a conclusion an accused acted outside the usual course of professional practice..."). Similarly, excessively harsh sentences would deter physicians from accepting government-sponsored insurance, which involves complex billing schemes fraught with human error.

In sum, a 20-year sentence is more than sufficient to deter others and to protect the public.

**4.     Respect for the law and Just Punishment**

A sentence of life is excessive in order to achieve respect for the law and to provide just punishment. We have addressed above the circumstances of the offense, the general and specific deterrence aspects of this particular case, and the issue of sentencing disparity. All of these factors suggest that below-guidelines sentences will adequately serve the purposes of sentencing in this case. The government insistence on excessive sentences invites the Court to disregard

---

[8]     The DEA itself has acknowledged that physicians have such fears. *Frequently Asked Questions and Answers for Health Care Professionals and Law Enforcement Personnel"* (2004), at p. 11, Question 6.

3553's requirement that the sentence be "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).

5. **Pertinent Policy Statements and request for downward departure**

As noted, the Court heard evidence in this case that many of the patients at issue in the indictment deliberately misled Dr. Schneider and others about their pain, their use of the controlled substances prescribed, and many engaged in doctor shopping and illicit drug use. Section 5K2.10 provides that "[i]f the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense." As discussed more at length in the defendants' objections to the PSR, and especially considering that the clinic dismissed hundreds of patients when their misconduct was discovered, the defendants respectfully request a downward departure on this basis.

With respect to the prescribing counts (Counts 2-6), Linda Schneider respectfully requests a downward departure. As noted, her conviction was for aiding and abetting only, and she had no direct knowledge of, or participation in, the course of treatment of any of the patients named in the indictment.

6. **Avoiding sentencing disparities**

The government urges the Court to impose life sentences with reference to "similar cases" from across the country, Gov't Br. at 1, but the government's selection of cases presents a woefully incomplete picture, for a number of reasons.

First, the facts of several of the cases cited by the government are readily distinguishable from the facts of this case. For example, in *Mukharjee*, unlike this case, the government presented evidence from undercover agents that were able to obtain prescriptions from the

defendants without any physical examination. The government also presented evidence that he saw multiple patients in his office at a time and charged $45 for each prescription. The defendant's medical office contained little equipment that was not utilized. In *Martinez*, the government presented videotape evidence of the defendant administering shots with no medical examination and with visits as short as 2-5 minutes. This type of evidence establishes that, unlike Dr. Schneider, who was attempting to care for his patients whom he believed needed treatment, these defendants were acting as true drug dealers and therefore the severe sentences imposed were merited.

Second, there are a number of comparable cases not mentioned by the government where the sentences imposed were significantly lower. See, e.g., *United States v. Bek*, 493 F.3d 790 (7th Cir.) (41 month sentence); *United States v. Katz*, 445 F.3d 1023 (8th Cir. 2006) (16 month sentence); *United States v. Feingold*, 454 F.3d 1001 (9th Cir. 2006) (144 month sentence) (remanded for resentencing but only on basis that district court assumed guidelines were mandatory); *United States v. Hurwitz*, Crim. No. 1:03cr467 (E.D. Va. 2007) (57 month sentence); *United States v. Chube*, Crim. No. 2:04cr096 (N.D. Ind. 2010) (sentencing co-defendant physicians to 25 months and 70 months).

Lastly, the defendants respectfully ask this Court to consider the defendants' conduct in this case not just in comparison to factually similar cases, but to other types of cases as well that have come before this Court. See, e.g. *United States v. Kaufman*, (imposing sentence of 180 months on Linda Kaufman); *United States v. Perrine*, 518 F.3d 1196 (imposing sentence of 235 months (19.5 years) for possession of child pornography and firearms); *United States v. Kennedy*, 2003 U.S. Dist. LEXIS 16856 (originally imposing sentence of 24 months

imprisonment, and revoking supervised release remanding defendant to custody for maximum of 24 months for violating conditions of release).

For all of these reasons, concerns about disparity in sentencing actually support the minimum sentence here.

**7.     Restitution**

As stated in the defendants' objections, many of the restitution claims are not adequately supported, or more properly, should be the subject of a civil proceeding.

## CONCLUSION

For all of the foregoing reasons, the defendants should be sentenced to concurrent terms of the mandatory minimum, 20 years.

Respectfully submitted,

s/ Lawrence W. Williamson, Jr.
Lawrence W. Williamson, Jr. #21282
**Williamson Law Firm, LLC**
**Attorney and Counselor at Law**
218 Delaware Street, Suite 207
Kansas City, Missouri 64105
Telephone:  913.871.7060
Facsimile:   913.535.0736
Email: l.williamson@williamsonfirm.com

Counsel for Stephen Schneider, DO

**Kevin P. Byers Co., L.P.A.**

s/Kevin P. Byers
Kevin P. Byers
OSB # 0040253
529 East Town Street, Suite 200
Columbus, Ohio 43215-4803
Telephone 614.228.6283

Facsimile 614.228.6425
Email: Kevin@KPByersLaw.com

**Burnham & Gorokhov, PLLC**

s/Eugene V. Gorokhov
Eugene V. Gorokhov
VSB # 73582
1724 20th Street NW, Suite 304
Washington DC 20009
Telephone 202.386.6920
Facsimile 267.390.7587
Email: eugene@burnhamgorokhov.com

 s/David P. Leon
1540 North Broadway, Suite 101
Wichita , KS 67214
Telephone 316.264.2154
Facsimile 316.263.0148
Email: leonlaw@cox.net

Co-counsel for Linda K. Atterbury

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing was filed via CM/ECF causing delivery to:

    Tanya J. Treadway
    Assistant United States Attorney
    290 U.S. Courthouse
    444 S.E. Quincy
    Topeka, KS 66683-3592

this October 16, 2010.

                                                        s/ Lawrence W. Williamson
                                                        Lawrence W. Williamson