**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STEPHEN J. SCHNEIDER and LINDA K. )<br>SCHNEIDER, a/k/a )<br>LINDA K. ATTERBURY, )<br>d/b/a SCHNEIDER MEDICAL CLINIC, )<br>)<br>Defendants. )<br>) | **CRIMINAL ACTION**<br><br>No. 07-10234-01, 02 |

**SENTENCING DECISION**

    The law requires me to give a statement of reasons for each sentencing decision I make. In most cases, the statement is very brief because the sentence is more or less mandated by the so-called federal sentencing guidelines or, in some cases, has been agreed upon by the government and defendant and I have approved the agreement.

    This case is different and my statement of reasons will be somewhat longer and more detailed. In arriving at the sentences I have considered many things. There is the trial, of course, and some things which occurred before the trial while the case was being managed by Magistrate Judge Bostwick, all of which are part of the record. I have given very careful attention to the presentence reports prepared by one of our highly competent probation officers. Each report is more than 100 pages long and covers not just the facts of the case but also background information regarding the Schneiders and claims made by former patients of the Schneider Clinic. Each report also contains a detailed calculation of the sentences under so-called federal sentencing the guidelines. The lawyers have had an

opportunity to review the reports and have made several objections to their contents and particularly to the guideline calculations. These objections are both commonly made and are entirely appropriate and I sustained several of them, either in whole or in part.

I have also given careful consideration to both the government's and defendants' written memoranda pertaining to sentencing and the letters I have received regarding the Schneiders, both pro and con. I have considered the statements made here in open court both by individuals and by counsel. Defendants have declined to make statements pertaining to their sentences, which is their right, and I have not held that against them in any way.

Finally, I have given the sentences considerable personal thought based on my experience and judgment because, in the end, the decision is mine and I must be able to live with it myself.

At the outset, I need to note the parameters of my decision. Some of the crimes of which defendants stand convicted carry mandatory minimum sentences of 20 year's imprisonment. These mandatory minimum sentences are established by Congress in statutes. I have no discretion to impose sentences less than the mandatory minimum. The lawyers know that. The maximum sentence allowed under the statutes for some of the crimes of conviction is life imprisonment.

I'm also required to consider the sentencing guidelines. The guidelines are not statutes, although for years many appellate judges treated them as such and to an extent, some still do. I have never much cared for the guidelines for reasons which are not relevant here. Nevertheless, decisions of appellate courts require me to give them "respectful consideration" which I always try to do and have done

here.  In most cases, the guidelines establish a range of sentence length - X to Y months.  In this case, the calculated guideline sentences for both defendants, after my ruling on the objections, is not a range-it is life imprisonment, which means life because there is no parole in the federal system and no credit for good time can be awarded on a life sentence.

I am also required to consider certain sentencing factors established by a federal statute, 18 U.S.C. § 3553.  This is where the majority of the parties' sentencing memoranda and argument have been focused and, as I go through the factors today, this has been an important aspect of my sentencing decisions.

Finally, there is another federal statute, 18 U.S.C. § 3661, which provides:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

This statute does get a lot of mention by appellate courts, particularly those courts which would like to return to the old days of rigid adherence to the guidelines.  But it is important in cases such as this because it recognizes that, in the end, each defendant is different and the cookie-cutter approach of the guidelines is not necessarily fair or appropriate.  The statute also recognizes that it is only the district judge, not the members of the sentencing commission or the judges on the appellate court, who must look each defendant in the eye at sentencing as opposed to reading about them on a computer screen or in a brief.

18 U.S.C. § 3553 requires me to impose a sentence sufficient but

-3-

not greater than necessary to comply with certain factors, which I'll cover separately with respect to each defendant where appropriate. However, because of the nature of the case and the identity of most of the counts of conviction, some of my remarks will cover both defendants.

The first factor is the nature and circumstances of the offenses. No claim or argument has been nor can be made that the offenses of conviction are not of the most serious nature. I'm not going to recount or try to summarize the many weeks of conflicting testimony. The jury properly found after conscientious deliberation and on the basis of more than sufficient evidence that several persons died and other persons were seriously injured by the actions of defendants, in addition to crimes of a monetary nature.

Two things need to be highlighted here. The first is that while the deaths and injuries involved controlled substances, they were prescribed, not purchased from some street level drug dealer whose business is per se illegal. I find that this difference makes the nature and circumstances of defendants' crimes that much more serious. I have sentenced many street-level drug dealers in the last 19 years. They and their crimes share one thing in common: everything they do is illegal and they have no duty or obligation, legal or otherwise, to do no harm to their customers. On the contrary, the ultimate business goal of the street drug dealer is to addict and perpetuate the addiction of his customers. The opposite is true here. Stephen Schneider, as a doctor, had both legal and moral responsibilities to his patients to do no harm. In addition, he was trained and expected to understand the serious nature of controlled substances and the harm

-4-

they can cause if they are improperly prescribed. His responsibility was to prescribe controlled substances so as to help and treat his patients but not to addict them. Part and parcel of this responsibility came from his training and experience to recognize addiction and how to help the patient avoid its disastrous consequences or, in appropriate cases, to treat the addiction.

I accept the evidence that many patients came to the clinic addicted to controlled substances and/or wanting controlled substances, but I totally reject the suggestion that Stephen Schneider somehow should be excused from criminal responsibility because some patients lied or otherwise deceived him about their addiction and desire for hard-core controlled substances. Granted, as Dr. Estivo said in his letter, drug seekers become very savvy and knowledgeable about symptoms and can fool even the best doctor. But I recall the old saying "fool me once, shame on you; fool me twice, shame on me." This was not a case about Stephen Schneider being fooled by one or two patients. Nor was this a case of medical negligence by an overworked or lazy or sloppy doctor. The evidence demonstrated that at least with patients who came to the clinic seeking controlled substances, in most cases they were given what they wanted.

The second thing that needs to be recognized is the nature and circumstances of the convictions as they apply to Linda Schneider. That Linda Schneider was convicted as an aider and abettor on many counts does not make her any less culpable under the law. The driver of the get-away car is just as guilty of bank robbery as the person who holds up the teller. I am firmly convinced by the totality of the evidence that Linda Schneider, in effect, was in the driver's seat

with respect to the majority of the wrongdoing which took place at the clinic. It was Linda Schneider who managed the clinic. She hired the "misfits," as she herself called them, to do the various jobs described at the trial. Many of the people she hired had no training or experience for the jobs they performed- inadequately in many cases. She allowed the patient's records to be in complete disarray. Even without testimony, the photos of files stacked on the floor and haphazardly piled elsewhere served as mute, indisputable evidence of the sloppy and unprofessional way she managed the clinic. I've commented on other aspects of Linda Schneider's role at the clinic in my memorandum regarding PSR objections and I won't repeat them here. There is no question from the evidence that Linda Schneider created and perpetuated the operation of the clinic so as to achieve its primary purpose as a generator of income, not as a place where careful, competent and conscientious medical care was provided. But on the flipside of this coin, Stephen Schneider had every reason to know that the clinic was being mismanaged and that patients were not being cared for properly, yet he did nothing to stop the problem. Of course it's impossible to reverse time. But as I look back over all that's occurred in this case, including the things chronicled in Judge Bostwick's orders regarding the statements and actions of Linda Schneider prior to trial, I have the distinct belief that had she not been involved in the operation of the clinic, or had she approached her role there in a professional and responsible way, none of us would be here. That doesn't excuse Stephen Schneider's wrongful acts, but it may somewhat explain them.

So how am I supposed to sum up the nature and circumstances of

offenses which took 7 weeks of testimony and volumes of evidence to present? The words which come to mind are an avoidable tragedy motivated by greed.

The next things I'm to consider are the history and characteristics of the defendants. I'll start with Stephen Schneider. As Mr. Williamson said, there's nothing in his background to predict this sort of outcome. He didn't come from a broken home, his family members aren't criminals and, of course, he has a medical education. I don't know that anyone, Stephen Schneider included, works hard enough to a earn medical degree just so that he can addict his patients to controlled substances and cause their injuries and deaths. And I don't believe that Stephen Schneider was a "bad doctor" throughout his years of practice. I credit that he made an effort to provide, and did provide, proper medical care to some of his patients at the clinic. But the evidence showed that for whatever reason, Stephen Schneider utterly failed to live up to his oath to "Do no harm." When the clinic's patients were overdosing and dying in numbers which no conscientious physician could ignore or overlook, Stephen Schneider did just that. The evidence overwhelmingly showed that Stephen Schneider, as a doctor, was put on every possible notice that the controlled substances he was prescribing, particularly Actiq, were addicting, harming and killing his patients. And he did nothing to stop it. Sure, some patients had to sign agreements not to misuse their prescriptions and others who "abused" their prescriptions were "fired" but there was no evidence that these things changed the overall clinic operation. Rather, the evidence showed that Stephen Schneider earned and deserved the nickname "Schneider the Writer"

-7-

because, in many cases, writing scripts was his only form of medical care.

Turning to Linda Schneider, there is nothing in her background to predict or explain why she is where she is now. But her statements and actions during her period of pretrial confinement, including her interaction with persons associated with the so-called Pain Control Network and with her sister, shed light on the nature of her true personality. These are matters covered in orders written by Judge Bostwick and by me and I'm not going to rehash them. They do not paint a favorable portrait of Linda Schneider or of her associates. I certainly do not hold it against Linda Schneider that she did not testify at trial, nor did the jurors. But unlike her husband, who has no criminal record, I have considered Linda Schneider's prior felony conviction, in my court, for a fraud-related offense. Despite some of the letters and statements I heard here yesterday, I believe the evidence has shown that Linda Schneider is a scheming, manipulative, uncaring criminal who believed, erroneously, that she was smart enough to "get away with it." A big mistake on her part.

I will say this about both defendants. From everything I've seen, they've done a creditable job as parents to their teenage daughters and it brings me no pleasure or satisfaction to impose long prison sentences which will separate them from their parents with the inevitable sadness and problems which will result.

The next things I must consider are the need for the sentences to reflect the seriousness of the offenses, to promote respect for the law and to provide just punishment. And contrary to a statement made yesterday by Mr. Byers, another component of this consideration is

retribution. The Tenth Circuit has made this clear as recently as May 5 of this year in the case of United States v. Delgadillo-Gallegos. Retribution simply means deserved punishment for wrongdoing.

I've already commented on the seriousness of the offenses. Do sentences, whatever they may be, promote respect for the law? Hard to say. In this case, where both defendants had every reason to know it was against the law to misprescribe controlled substances, they did not respect that law. Linda Schneider's prior fraud offense was committed even before the clinic was opened. She obviously had no respect for the law when she committed that offense. I've never thought it does much good to profess respect for the law after one has committed the crime, but at least one should learn from one's crimes.

The Schneiders' convictions and sentences may, or may not, cause others to respect the laws violated in this case. I'll touch on that in a minute. Finally, there's just punishment and retribution. Some of the letters written on the Schneiders' behalf express the view that because they've lost their livelihood and property, they've been "punished enough." I've seen many similar letters in other cases and generally, as here, they're well-meaning but uninformed. Only a person whose view is totally unobjective because of family ties or friendship could look objectively at the facts of this tragic case and believe that "enough" punishment has been meted out. It may seem unfair that wealthy businessmen and crooked politicians get away with their crimes or receive slap-on-the-wrist sentences. When they do, it is unfair to all of us. But I have to impose sentences in this case based on the facts and law applicable to this case, not on what some other judge did in some unrelated case. And this case clearly

-9-

calls for punishment and retribution. The letters, testimony and statements in support of the Schneiders are heavily outweighed by the evidence of the effects of their crimes on patients of the clinic.

The next statutory factors are to provide adequate deterrence to criminal conduct and to protect the public from further crimes of these defendants. The public does not need to be protected from further crimes of these defendants, unless one considers prison personnel or inmates to be the "public." If they commit crimes while in the penitentiary, I assume they'll be held accountable.

Deterrence is another consideration which was spoken to yesterday by all lawyers. The government urges life sentences on the basis that they will deter others in the medical profession from committing similar offenses. Of course there's no evidence before me to support this contention. Defense counsel counter that harsh sentences in other similar cases haven't been shown to deter anyone and will deter doctors from prescribing controlled substances to patients suffering from chronic pain. There's no evidence of that, either and it sounds like the irresponsible propaganda of the Pain Control Network. One thing's for sure, convictions and sentences in other cases, didn't deter the Schneiders.

I suppose there are studies by criminologists and sociologists about the deterrent effect of sentences and I'm willing to bet that one can find statistics and conclusions on both sides of the issue. My experience, based on other types of cases, is that most criminals never think they'll be caught so they aren't deterred by the possibility of a prison sentence. Or sadly, in some cases, the possibility of serving a prison sentence is just part of the cost

doing the crime. To some extent, it depends on how well the sentence is publicized. I don't expect that we'll see another case like this in Wichita for quite a while, hopefully never. But elsewhere, who can say.

There is one aspect of deterrence I hope this case achieves and that is to curtail or stop the activities of the Bozo the Clown outfit known as the Pain Control Network, a ship of fools if there ever was one. A ship of fools is an allegory in Western literature which depicts a ship with deranged passengers without a pilot who are seemingly ignorant of their own direction. When persons leading or involved in an organization such as the Pain Control Network are so stupid that they support what occurred in this case, they demean the efforts of legitimate medical providers to help persons suffering from chronic pain.

A final consideration is unwarranted sentence disparity; a worthy, but largely unworkable, goal. The parties have drawn my attention to cases which they believe are similar to this case where sentences were imposed which comport with their contrasting views about the appropriate sentences in this case. Some of the cases are comparable. Others aren't so comparable. The problem is that reported decisions are only a snapshot –they don't go into all that much detail about the crimes themselves. The presentence reports in those cases are not matters of record so not much is known about the defendants. About all the cases tell me is that doctors involved in somewhat similar cases have received long sentences, including life, but they don't tell me how the district judge reached his or her decision.

-11-

In this case, I think I must try to avoid <u>unwarranted</u> sentence disparity between Stephen and Linda Schneiders' sentences. They have not been found guilty of totally identical crimes. The primary difference is that Linda was found guilty of most of the money laundering counts whereas Stephen was found guilty on only two. On the other hand, under the guidelines, Stephen's adjusted offense level is 48 whereas Linda's is 46. I cannot explain this discrepancy and to a large extent, the difference is irrelevant because any offense level of 43 and above calls for a life sentence.

As I've noted previously, Linda has a prior felony conviction whereas Stephen has no criminal history. This makes no difference under the guidelines but it is something I can, and have, taken into consideration because of the nature of the prior crime and because it is recent. Finally, for the reasons I've stated, I find that the evidence supports the conclusion that Linda's conduct is more culpable than Stephen's to the extent that she ran the clinic in a way which facilitated the controlled substance crimes directly committed by Stephen. But it was Linda who directed the overbilling which lead to the fraud crimes for which Stephen had no direct involvement.

There is one last matter on which I feel compelled to comment before I pronounce the sentences. During the trial, several of the government's physician witnesses testified about the clinic's and/or Stephen Schneider's reputation as an indiscriminate writer of controlled substance prescriptions. At least one pharmacist testified similarly. As I recall, all expressed their concern because of overdoses suffered by clinic patients. One of the physicians called Stephen Schneider about an overdose patient and received a less than

satisfactory, to him anyway, response.

On cross-examination, Mr. Williamson asked these witnesses whether they'd reported their concerns to a medical society or to appropriate authorities. I don't recall that any had done so. Keeping in mind that the Kansas Board of Healing Arts apparently was or should have been aware of what was going on at the clinic and still did nothing, that does not excuse a physician from failing to pursue what he or she believes to be conduct by another physician which endangers the life or health of that physician's patients. I'm not going to get into the legal aspects of reporting here. Perhaps the medical providers involved believed they had valid reasons for not following up on their concerns. But they might ask themselves: had they reported their concerns, would it have saved a clinic patient from death or injury due to improper and illegal practices involving Stephen Schneider's dispensing of controlled substances?

Turning to the sentences, I am unable to grant counsels' request that their clients receive the minimum sentences of 20 years imprisonment. Such sentences would not achieve the purposes of § 3553. I recognize that the Schneiders are in their 50s and that long sentences in terms of years, but less than life, may result, in effect, in life sentences. But no one can predict how long anyone will live.

I've also considered the government's argument for life sentences. I've imposed life sentences in other cases but all have involved intentional murder committed by defendants who can only be described as sub-human scum. As bad as this case is, it doesn't involve intentional murder. In addition, imposing the same sentence

on both defendants would not comport with the distinctions I've tried to outline in this decision.

Accordingly, I have determined to sentence Stephen Schneider to serve an effective sentence of 30 year's imprisonment and Linda Schneider to serve 33 year's. By statute, Linda Schneider will receive credit on her sentence for the approximately 14 months she spent in pretrial confinement so the disparity is not as great as it may initially appear.

IT IS SO ORDERED.

Dated this ___20th___ day of October 2010, at Wichita, Kansas.

s/ Monti Belot<br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE