IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                           Case No. 07-10234-01-JWB

STEPHEN SCHNEIDER,

        Defendant.

**MEMORANDUM AND ORDER**

This matter comes before the court on Defendant Stephen Schneider's motion for compassionate release and to reduce sentence. (Doc. 851.) Defendant seeks early release due to his underlying health conditions and the current COVID-19 pandemic. Defendant also asserts that he is entitled to release because the government violated his due process rights when the court dismissed his second motion to vacate sentence. The motion has been fully briefed and the court is prepared to rule. (Docs. 854, 858.) For the reasons stated herein, Defendant's motion for compassionate release is DENIED with respect to his argument relating to the COVID-19 pandemic and DISMISSED FOR LACK OF JURISDICTION with respect to his argument concerning a violation of his due process rights.

**I.    Facts and Procedural History**

Defendant Stephen Schneider was a doctor of osteopathic medicine and his wife, co-defendant Linda Schneider, was a licensed practical nurse. They provided pain management treatment in their clinic, including the prescription of controlled substances. The clinic was open long hours, seven days a week. Defendant was the only full-time doctor on staff.

1

On March 3, 2010, the grand jury returned a third superseding indictment charging both Defendants as follows: Count 1—conspiracy to unlawfully distribute drugs, commit health care fraud, engage in money laundering, and defraud the United States in violation of 18 U.S.C. § 371; Counts 2–6—unlawful drug dispensing and distribution and unlawful drug distribution resulting in death in violation of 21 U.S.C. § 841(a)(1); Counts 7–17—health care fraud and health care fraud resulting in death in violation of 18 U.S.C. § 1347; and Counts 18–34—money laundering in violation of 18 U.S.C. § 1957. (Doc. 414). The case proceeded to trial.

The evidence at the jury trial was that Defendants' clinic was a regular "pill mill," fraudulently generating significant amounts of money, and both Defendants had little to no concern for the patients. The government's expert on patient care concluded that Defendants "(1) ran a practice that attracted drug addicts; (2) took inadequate medical histories; and (3) indiscriminately prescribed controlled drugs in excessive and escalating amounts." *United States v. Schneider*, 704 F.3d 1287, 1291 (10th Cir. 2013). Dr. Douglas Jorgensen, the government's expert on pain management and billing practices, opined that Defendants filed fraudulent claims to insurance providers. *Id.* Dr. Graves Owen, an expert in pain management, testified that Stephen did not prescribe controlled substances for a legitimate medical purpose. *Id.* From February 2002 to February 2008, sixty-eight patients died of drug overdoses. Defendant called overdosing patients "bad grapes." *United States v. Schneider*, 112 F. Supp. 3d 1197, 1203 (D. Kan. 2015), *on reconsideration*, No. CR 07-10234-01, 2015 WL 13679981 (D. Kan. Sept. 15, 2015), and *aff'd*, 665 F. App'x 668 (10th Cir. 2016). During the same time period, over 100 clinic patients were admitted to local hospitals for overdoses. *Id.* Defendants received repeated calls from law enforcement, concerned family members about patients' drug addictions, concerned pharmacists,

and calls from emergency room physicians about the clinic's prescription practices. Defendants' method of operation continued without change.

The jury found Stephen guilty of Counts 1–17 and two money laundering charges (Counts 26 and 28), and found Linda guilty of all charges save two money laundering charges (Counts 23 and 24). Judge Monti Belot sentenced Stephen to 360 months' imprisonment on counts 1–5 and 7–9, to run concurrently. (Doc. 529.) Linda was sentenced to 396 months' imprisonment on counts 1–5 and 7–9, to run concurrently. Defendant timely appealed and the Tenth Circuit affirmed the convictions and sentences. *Schneider*, 704 F.3d 1287. Based on a change in the law after sentencing, Defendant successfully challenged some of his convictions in a motion under 28 U.S.C. § 2255, although that did not result in a different sentence upon resentencing. *Schneider*, 112 F. Supp. 3d at 1223. Defendant was resentenced to the same 360-month sentence. (Doc. 803.) The controlling sentence was based on Defendant's conviction on count 4, unlawful dispensing and distribution of prescriptions drugs resulting in the death of Robin G. According to the statement of reasons and the presentence report, the guideline range was life. (Docs. 801, 804.) Defendant's judgment was affirmed on appeal. *Schneider*, 665 F. App'x at 676. Defendant then filed another motion to vacate his sentence on January 4, 2018. (Doc. 837.) This court dismissed the motion as a second or successive 2255 motion. (Doc. 841.)

Defendant is currently incarcerated at FCI Forrest City Low in Forrest City, Arkansas. Based on the information provided by the Bureau of Prisons, FCI Forrest City currently has no active COVID-19 cases among inmates and only 3 cases among staff. Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed July 15, 2021). There have been no deaths among inmates or staff. *Id.* Defendant's projected release date is September 9, 2035. *See* Federal

3

Bureau of Prisons, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (Stephen Schneider, last accessed July 14, 2021).

On June 1, 2021, Defendant filed a motion seeking early release due to his health conditions that make him more susceptible to serious health complications should he contract COVID-19. (Doc. 851.) The government opposes Defendant's motion for release on the basis that he has not shown extraordinary circumstances and the sentencing factors do not weigh in favor of a sentence reduction to a time served sentence. (Doc. 854.)

Although there is no right to counsel in the filing of these motions, District of Kansas Standing Order 19-1 allows the appointment of the Federal Public Defender ("FPD") to represent indigent defendants who may qualify to seek compassionate release under § 603 of the First Step Act. Administrative Order 20-8 supplements 19-1 and sets forth procedures to address compassionate release motions brought on grounds related to the COVID-19 pandemic. Under 20-8, the FPD has fifteen days to notify the court whether it intends to enter an appearance on behalf of any pro se individual filing a compassionate release motion based on COVID. Here, the FPD notified the court that it did not intend to enter an appearance to represent Defendant.

## II.   Legal Standard

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), was amended by The First Step Act. Now, a defendant may file his own motion if certain conditions have been met. The Tenth Circuit has recently endorsed a three-step test for district courts to utilize in deciding motions filed under § 3582(c)(1)(A). *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). Under that test, the court may reduce a sentence if Defendant has administratively exhausted his claim and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is

consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* A court may deny the motion when any requirement is lacking and the court need not address the other requirements. *Id.* at 1043. But all requirements must be addressed when the court grants a motion for release under the statute. *Id.* With respect to the second requirement, the applicable policy statements, the Tenth Circuit has held that the current policy statement on extraordinary circumstances is not applicable to motions filed by a defendant. *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021). Defendant bears the burden of establishing that compassionate release is warranted under the statute. *See, e.g., United States v. Dial*, No. 17-20068-JAR, 2020 WL 4933537 (D. Kan. Aug. 24, 2020); *United States v. Dixon*, No. 18-10027-02-JWB, 2020 WL 6483152, at *2 (D. Kan. Nov. 4, 2020).

Here, the government argues that Defendant has not shown extraordinary circumstances and that the sentencing factors do not support a time served sentence.

### III.  Analysis

#### A.  Exhaustion

The government does not dispute that Defendant has presented his request for release to the warden as required by the statute. But the government asserts that Defendant has not exhausted his claim because he has not presented the court with his request that was submitted to the warden in order to demonstrate that the reasons set forth in his motion were the same reasons presented to the warden. In response, Defendant argues that the government should have access to his request and it should not be his burden to provide the document that he submitted to the warden. (Doc. 858 at 2.) Because it is undisputed that Defendant has presented his request for compassionate release to the warden and that request was denied, the court will proceed to consider Defendant's

motion. (Doc. 851-1.) Based on the court's decision herein, it would be a waste of time and resources to deny the motion without prejudice based on the absence of the actual request.

### B. Extraordinary and Compelling Reasons

Defendant argues that the current COVID-19 pandemic, his current age (67), his diminished respiratory status due to his prior positive COVID-19 status, and his incarceration in the penitentiary provide a compelling reason for his immediate release. (Doc. 859 at 10-16.) Defendant also makes several general statements regarding prisons, overcrowding, mistreatment by prison guards, and inadequate medical care. None of these conclusory statements are supported by any particular facts regarding FCI Forrest City Low. In response, the government asserts that Defendant's motion does not show a compelling reason for release because it only makes general statements regarding a fear of COVID-19 and Defendant has been vaccinated against COVID-19. (Doc. 854 at 11.) Therefore, his risk from COVID-19 has been mitigated to "such an extent that he can no longer sustain an extraordinary and compelling reason to grant compassionate release." (*Id.* at 12.) In reply, Defendant argues that he has skin cancer, gets winded when he walks, the prison is overcrowded, and BOP routinely ignores medical recommendations.

The Tenth Circuit has held that this court has independent discretion to determine whether a defendant has shown "extraordinary and compelling reasons" that warrant release. *See McGee*, 992 F.3d at 1044, 1048. "[E]xtraordinary" means "exceptional to a very marked extent." *United States v. Ford*, — F. Supp. 3d. —, 2021 WL 1721054, at *3 (D. Kan. Apr. 30, 2021) (quoting *United States v. Baydoun*, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting "extraordinary," *Webster's Third International Dictionary, Unabridged* (2020)). Although not binding on this court, the Sentencing Commission has identified that grounds for release due to extraordinary and compelling reasons can include a (1) defendant's medical

condition; (2) age; (3) family circumstances; and (4) a catchall category of an "extraordinary and compelling reason other than, or in combination with," the first three categories.  *Id.* (citing U.S.S.G. § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018)) and *United States v. Carr*, No. 20-1152, — F. App'x. —, 2021 WL 1400705, at *4 (10th Cir. Apr. 14, 2021) (district court has discretion to consider definition of extraordinary and compelling reasons in Section 1B1.13 application notes).

Here, Defendant argues that the following health factors increase his vulnerability to COVID-19: age; skin cancer; and his diminished lung capacity due to COVID-19.

The court finds that Defendant's medical conditions and the conditions at FCI Forrest City Low do not constitute extraordinary and compelling reasons for a reduced sentence.  Although Defendant argues that the BOP's policies, overcrowding, and medical care regarding COVID-19 is inadequate, Defendant's statements are conclusory.  BOP has undertaken "extensive and professional efforts to curtail the virus's spread."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  Reviewing the BOP website concerning COVID-19, there are currently zero prisoner cases of COVID-19 at FCI Forrest City Low.  *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 15, 2021).  Out of the 130,093 federal inmates incarcerated custody at this time, only 93 inmates nationwide have confirmed positive test results. *Id.*  Although the COVID-19 pandemic is a significant ongoing health concern, Defendant has not met his burden to show extraordinary circumstances due to his health conditions and the COVID-19 pandemic because there are no positive prisoner cases at his facility and he has been vaccinated.[1]  *See United States v. Verdin-Garcia*, No. 05-20017-01-JWL, 2021 WL 2144801, at *2 (D. Kan. May 26, 2021) (no inmates with active infections weighs against compassionate

---

[1] Defendant does not argue that the vaccine is ineffective.

7

release); *United States v. Young*, No. CR 10-20076-01-KHV, 2021 WL 1999147, at *3 (D. Kan. May 19, 2021). Moreover, Defendant has not shown that compared to release in the community at large, "he faces a heightened or imminent risk of exposure to COVID-19" at FCI Forrest City Low. *Young*, 2021 1999147 at *3.

### C. Sentencing Factors

Further, even had Defendant shown extraordinary circumstances supporting a reduction, the reduction would not be warranted after consideration of the sentencing factors. Prior to granting a motion for compassionate release, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Reece*, No. 16-20088-JAR, 2020 WL 3960436, at *2, 7 (D. Kan. July 13, 2020). Some of the sentencing factors include the nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness of the offense and afford adequate deterrence; the guideline sentencing range; and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

Defendant's current projected release date is September 9, 2035, with good time credits. Based on Defendant's detention in 2010, Defendant has not even served half of his 360-month sentence. Defendant argues that his health conditions and the risks he is facing as an inmate during the pandemic support a sentence reduction. Defendant also asserts that he has a spotless record while in custody. Defendant, however, does not attempt to address the remaining sentencing factors in this case which weigh significantly against a sentence reduction to time served.

Defendant's criminal convictions are severe. He was convicted of several counts of health care fraud, money laundering, and unlawfully dispensing prescription medication. One of the counts of conviction involved distribution that resulted in the death of a patient. The evidence was overwhelming at trial. Even though only one death was determined to be directly caused by the

prescriptions, a substantial number of Defendant's patients died of overdoses. Moreover, Defendant's conduct resulted in millions of dollars in losses to numerous victims. (Doc. 801 at 86-89.)

In his motion, Defendant makes no argument regarding the nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness of the offense and afford adequate deterrence; the guideline sentencing range; and the need to avoid unwarranted sentence disparities. Here, the guideline sentencing range was life and Defendant was sentenced to less than life.

Reducing Defendant's sentence to time served would not reflect the seriousness of his criminal conduct, nor would it furnish adequate deterrence to criminal conduct or provide just punishment. Defendant's conduct in this case resulted in death of one of his patients. There were also numerous other patients who died from overdoses after receiving prescriptions from Defendant at his pill mill. Defendant's reply brief argues that he is not a violent offender and cannot commit these same crimes again. While Defendant may be unable to reoffend in the same manner due to the loss of his medical license, Defendant's conduct that resulted in his sentence was severe and resulted in a loss of life. The sentencing factors, which supported the sentence Defendant received, also support a term of imprisonment greater than a time-served sentence. The court finds that the imposed sentence remains sufficient, but not greater than necessary, to meet the sentencing factors in § 3553(a) and punish the offense.

After considering the factors enumerated in § 3553(a), Defendant's motion to reduce his sentence to time served is denied.

**D. Due Process**

Defendant further argues that he should be released because the government violated his due process rights. This argument revolves around accusations that the prosecutor in the jury trial violated Defendant's rights.[2] (Doc. 851 at 3.)

Although Defendant cages this request as a basis for compassionate release, a review of the record shows that it is a second or successive § 2255 motion. Section 2255(h) provides in part that a second or successive motion must be certified as provided in § 2244 by a panel of the appropriate court of appeals to contain certain newly discovered evidence or a new rule of constitutional law made retroactive by the Supreme Court. 28 U.S.C. § 2255(h). Absent such authorization, a district court has no jurisdiction to consider a second or successive § 2255 motion. *In re Cline,* 531 F.3d 1249, 1251 (10th Cir. 2008). Defendant has not obtained the proper certification from the Tenth Circuit.

Therefore, this court lacks jurisdiction to consider Defendant's argument.

## IV.     Conclusion

Defendant's motion for sentence reduction under § 3582 based on the COVID-19 pandemic is DENIED. (Doc. 851.) Defendant's motion for compassionate release is DISMISSED FOR LACK OF JURISDICTION with respect to his argument concerning a violation of his due process rights.

IT IS SO ORDERED. Dated this 21st day of July 2021.

                                                                                    s/ John W. Broomes
                                                                                    JOHN W. BROOMES
                                                                                    UNITED STATES DISTRICT JUDGE

---

[2] The court notes that Defendant's evidence regarding this accusation is comprised of articles regarding a different criminal case. (Doc. 851-2.) Defendant cites no evidence of improper conduct that occurred in this criminal action. Therefore, to the extent that this court could consider this argument as a basis for compassionate release, it would be denied based on a lack of extraordinary circumstances and under review of the sentencing factors as set forth herein.