IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 07-10234-1-JWB

STEPHEN SCHNEIDER,

Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to reduce sentence (Doc. 874)[1] and the parties' motions to file certain exhibits under seal (Docs. 872, 876, 878, 882). The motions have been fully briefed and are ripe for decision. (Docs. 875, 877, 879, 883.) The motion to reduce sentence is DENIED and the motions to seal are GRANTED for the reasons stated herein.

## I. Facts and Procedural History

Defendant Stephen Schneider ("Defendant" or "Stephen") was a doctor of osteopathic medicine and his wife, co-defendant Linda Schneider, was a licensed practical nurse. They provided pain management treatment in their clinic, including the prescription of controlled substances. The clinic was open long hours, seven days a week. Defendant was the only full-time doctor on staff.

On March 3, 2010, the grand jury returned a third superseding indictment charging both Defendants as follows: Count 1—conspiracy to unlawfully distribute drugs, commit health care fraud, engage in money laundering, and defraud the United States in violation of 18 U.S.C. § 371; Counts 2–6—unlawful drug dispensing and distribution and unlawful drug distribution resulting

[1] Defendant filed an amended motion to reduce sentence (Doc. 874) shortly after filing his initial motion to reduce sentence (Doc. 873). His initial motion is therefore moot.

in death in violation of 21 U.S.C. § 841(a)(1); Counts 7–17—health care fraud and health care fraud resulting in death in violation of 18 U.S.C. § 1347; and Counts 18–34—money laundering in violation of 18 U.S.C. § 1957. (Doc. 414.) The case proceeded to trial.

The evidence at the jury trial was that Defendant's clinic was a "pill mill," fraudulently generating significant amounts of money, and both Defendant and his wife had little to no concern for the patients. The government's expert on patient care concluded that Defendant "(1) ran a practice that attracted drug addicts; (2) took inadequate medical histories; and (3) indiscriminately prescribed controlled drugs in excessive and escalating amounts." *United States v. Schneider*, 704 F.3d 1287, 1291 (10th Cir. 2013). Dr. Douglas Jorgensen, the government's expert on pain management and billing practices, opined that Defendant filed fraudulent claims to insurance providers. *Id.* Dr. Graves Owen, an expert in pain management, testified that Defendant did not prescribe controlled substances for a legitimate medical purpose. *Id.* From February 2002 to February 2008, sixty-eight patients died of drug overdoses. Defendant called overdosing patients "bad grapes." *United States v. Schneider*, 112 F. Supp. 3d 1197, 1203 (D. Kan. 2015), *on reconsideration*, No. CR 07-10234-01, 2015 WL 13679981 (D. Kan. Sept. 15, 2015), and *aff'd*, 665 F. App'x 668 (10th Cir. 2016). During the same time period, over 100 clinic patients were admitted to local hospitals for overdoses. *Id.* Defendant received repeated calls from law enforcement, family members concerned about patients' drug addictions, concerned pharmacists, and calls from emergency room physicians about the clinic's prescription practices. Defendant's method of operation continued without change.

The jury found Stephen guilty of Counts 1–17 and two money laundering charges (Counts 26 and 28), and found Linda guilty of all charges save two money laundering charges (Counts 23 and 24). Judge Monti Belot sentenced Stephen to 360 months' imprisonment on counts 1–5 and

7–9, to run concurrently. (Doc. 529.) Linda was sentenced to 396 months' imprisonment on counts 1–5 and 7–9, to run concurrently. Defendant timely appealed and the Tenth Circuit affirmed the convictions and sentences. *Schneider*, 704 F.3d 1287. In January 2014, the Supreme Court issued a decision in *Burrage v. United States*, 571 U.S. 204 (2014). In *Burrage*, the Court held "that, at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death [], a defendant cannot be liable under the penalty enhancement provision of § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." 571 U.S. at 218–19. Based on this change in the law, Defendant successfully challenged some of his convictions in a motion under 28 U.S.C. § 2255, although that did not result in a different sentence upon resentencing. *Schneider*, 112 F. Supp. 3d at 1204–18, 1223. Essentially, all of the convictions for counts based on the death-results enhancement were vacated except for one, Count 4. Defendant was resentenced to the same 360-month sentence. (Doc. 803.) The controlling sentence was based on Defendant's conviction on Count 4, unlawful dispensing and distribution of prescriptions drugs resulting in the death of Robin G. According to the statement of reasons and the presentence report, the guideline range was life. (Docs. 801, 804.) Defendant's judgment was affirmed on appeal. *Schneider*, 665 F. App'x at 676. Defendant then filed another motion to vacate his sentence on January 4, 2018. (Doc. 837.) This court dismissed the motion as a second or successive § 2255 motion. (Doc. 841.)

On June 1, 2021, Defendant filed a motion for compassionate release on the basis that his health and COVID-19 constituted extraordinary circumstances. (Doc. 851.) The court denied the motion for compassionate release. (Doc. 860.) In September 2022, Defendant filed a petition with the Tenth Circuit seeking permission to file a successive § 2255 motion with this court. (Doc. 862.) Defendant's petition was based on the Supreme Court's decision in *Ruan v. United States*,

597 U.S. 450 (2022). *Ruan* involved the statutory interpretation of 21 U.S.C. § 841(a)(1), which provides that "[e]xcept as authorized . . . it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance." The Court held "that § 841's 'knowingly or intentionally' *mens rea* applies to the 'except as authorized' clause." 597 U.S. at 457 (quoting 21 U.S.C. § 841). Therefore, to prove this crime, a defendant must have knowingly or intentionally acted in an unauthorized manner in dispensing prescription drugs. *Id.* Defendant sought to file a successive petition under § 2255 to challenge his conviction based on the change in law under *Ruan*. The Tenth Circuit denied Defendant's petition, finding that *Ruan* had not been made retroactive to cases on collateral review. (Doc. 863.)

Now, Defendant moves for compassionate release on the basis of his age, health conditions, and the change in law announced in *Ruan*. The government opposes the motion.

## II. Standard

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but [that] rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011)). Defendant moves for a sentence reduction under § 3582(c)(1)(A). The Tenth Circuit has endorsed a three-step test for district courts to use in deciding motions filed under that statute. *United States v. Hald*, 8 F.4th 932, 937 (10th Cir. 2021). Under that test, the court may reduce a sentence if Defendant has administratively exhausted his claim[2] and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* at 938. A court may deny the motion when any of the three

[2] Defendant exhausted his administrative remedies. (Doc. 879-1.)

requirements is lacking and the court need not address the other requirements. *Id.* But all requirements must be addressed when the court grants a motion for release under the statute. *Id.* Defendant bears the burden of establishing that compassionate release is warranted under the statute. *See, e.g.*, *United States v. Moreno*, 519 F. Supp. 3d 937, 941 (D. Kan. 2021).

## III. Analysis

### A. Change in Law

The court first addresses Defendant's argument that the change in law announced in *Ruan* amounts to an extraordinary and compelling circumstance. The government asserts that it cannot based on the Supreme Court decisions in both *Rutherford v. United States*, 608 U.S. 454, 146 S. Ct. 1320 (2026) and *Fernandez v. United States*, 608 U.S. 411, 146 S. Ct. 1292 (2026). The court agrees with the government.

Prior to *Rutherford* and *Fernandez*, the Tenth Circuit allowed district courts to consider whether a change in law with respect to a mandatory sentence constituted an extraordinary and compelling circumstance. *See United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021), *abrogated by Rutherford*, 608 U.S. 454. A court could consider such change along with other circumstances; it could not be the sole basis for a sentence reduction. *Id.* The Tenth Circuit, however, has been clear that the court must not consider claims that are governed by § 2255 in a motion seeking relief under § 3582(c)(1)(A). *United States v. Wesley*, 60 F.4th 1277, 1289 (10th Cir. 2023). Section "2255 is presumptively the vehicle by which federal prisoners must raise challenges to their convictions or sentences." *Id.* at 1284.

In *Rutherford*, the Supreme Court held that "the fact that a preamendment sentence is longer than it would have been postamendment is not an 'extraordinary and compelling reaso[n]' that 'warrant[s]' a sentence reduction [and] [i]nsofar as the Commission's amended policy

statement maintains otherwise, it conflicts with the statute." 608 U.S. at 465 (citation omitted). The Court also explained that the "heartland of compassionate release . . . has long been defined by a prisoner's personal circumstances" and that a nonretroactive sentencing amendment was not one of them. *Id.* at 466. Defendant argues that *Rutherford* didn't speak to the exact issue here because the change in law came from a Supreme Court decision in *Ruan* and not a statutory change. (Doc. 883 at 5–7.) While *Rutherford* did not directly address such a change, the reasoning remains the same. A change in the law that is not applicable to Defendant because it was not made retroactive and that he has unsuccessfully attempted to challenge on a second or successive § 2255 is not the type of situation contemplated by Congress. Rather, Defendant's arguments are essentially attacks on his convictions and are of the nature that are to be brought under § 2255 as Defendant has unsuccessfully tried to do. The fact that Defendant is attempting to repackage his arguments under § 3582 is not persuasive here.

*Fernandez* speaks about this issue as well. The Court held that the compassionate release statute is focused on "granting mercy rather than righting legal wrongs." *Fernandez*, 608 U.S. at 424.

> If compassionate release were a vehicle for attacking the validity of a conviction, it is hard to see why the Bureau of Prisons would run the process. The Bureau's institutional expertise lies in the daily lives of prisoners: matters relating to their 'safekeeping,' 'care,' 'subsistence,' 'protection,' 'instruction,' and 'discipline.' 18 U.S.C. § 4042(a). So it makes sense for the statute to instruct the Bureau to help terminally ill prisoners seek compassionate release. § 3582(d). By contrast, it makes little sense to have the Bureau evaluate legal arguments and comb trial records to determine whether a prisoner has a 'compelling' argument that his conviction was wrongful.

*Id.* at 425. A defendant "cannot deploy § 3582 to blunt what he perceives to be the sharp edges of § 2255." *Id.* at 427.

Although Defendant argues that the change in law here is an appropriate consideration, his arguments on this point clearly attack the validity of his conviction and sentence. Defendant argues that he was prosecuted under a "starkly different regime" than the current law and that the instructions to the jury in his case were erroneous under the current law. (Doc. 875 at 23.) Further, Defendant argues that he would not have been convicted of Count 4 had the jury been instructed as set forth in *Ruan* based on the evidence at trial. Defendant's brief spends a significant amount of time on the evidence at trial as pertaining to Count 4 and arguing about its insufficiency. Defendant then asserts that this court can consider the change in the law and the difference in his sentence because, as he sees it today, he would "not have been convicted on the controlling count, and may not have been charged at all." (Doc. 875 at 24.) In support of his argument that the court should take the change of law into consideration, Defendant cites to *McGee*. (*Id.*) *McGee*, however, has been abrogated by the Supreme Court's decision in *Rutherford*.

Defendant's arguments based on *Ruan*, and his related arguments that his sentence is disproportionate to other physicians convicted of similar crimes, are claims governed by § 2255. Therefore, they are not a compelling basis under § 3582 to reduce Defendant's sentence. The court turns to the remaining arguments raised by Defendant.

**B. Health Condition and Age**

Next, Defendant asserts that his health conditions and age constitute extraordinary and compelling circumstances that justify a reduction in his sentence. The court disagrees.

Defendant and the government have offered Defendant's medical records in support of their respective positions. They both also seek to seal those records and redact portions of Defendants' briefs discussing some of Defendant's conditions. (Docs. 872, 876, 878, 882.) Given

the sensitive and personal information contained in the records, the court grants the motions to seal. The court has reviewed all the records in reaching a decision.

Defendant suffers from several chronic conditions, including degenerative joint disease, cardiac issues, hyperlipidemia, skin cancer, gastrointestinal issues, cataracts, and esophageal reflux. (*See* Doc. 878-1.) Defendant argues that the BOP has, on occasion, failed to treat or delayed in the treatment of some of his conditions. Defendant argues that his health conditions and age constitute extraordinary and compelling reasons that would support a reduction in sentence.

The Sentencing Commission's policy statement outlines medical circumstances that are extraordinary and compelling to justify compassionate release. Those include the following: defendant is suffering from a terminal illness; defendant is suffering from a serious physical or medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he [] is not expected to recover"; "defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1). Additionally, the policy statement provides that an extraordinary and compelling circumstance includes when a defendant is at least 65 age, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years of his imprisonment. *Id.* § 1B1.13(b)(2).

Defendant is not suffering from a terminal illness, but argues that all remaining medical circumstances are applicable to him. Under § 1B1.13(b)(1)(B), Defendant must be suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care. Here, Defendant has not established that any physical or medical condition substantially

diminishes his ability to provide self-care. While the policy statement does not define self-care, "courts have generally interpreted the phrase to refer to one's ability to independently ambulate, take care of personal hygiene, and perform other tasks such as dressing, eating, and taking medication." *United States v. Morgan*, No. 21-CR-40041-TC, 2025 WL 2687363, at *3 (D. Kan. Sept. 19, 2025) (citing *United States v. Gray*, Crim. A. No. 21-637 (JRK), 2024 WL 3345482, at *3 (N.D. Ohio July 8, 2024) (collecting cases)). With the exception of the ability to ambulate, Defendant does not assert that he cannot take care of his personal hygiene or perform tasks related to dressing himself, eating, or taking his medication. Defendant argues in his motion that his degenerative joint disease impairs his ability to ambulate and makes him unable to engage in certain physical activities. (Doc. 875 at 14.) While the record shows that he does have knee pain due to his condition, the record also shows that he runs a couple of miles and exercises for an hour a day. (Docs. 876-9, 878-1 at 134.) Such evidence does not support a finding that he cannot ambulate. Further, even if he could not ambulate without some assistance, courts have determined that use of a wheelchair alone would not support a finding that a defendant's ability for self-care is substantially diminished. *Morgan*, 2025 WL 2687363, at *3. Defendant also asserts that his vision is impaired and he has ongoing gastrointestinal problems. Defendant does not articulate how these conditions substantially diminish his ability to provide self-care. He has only made a conclusory statement that it is so. That is not sufficient to support his burden.

Defendant also argues that he has established that he has a serious condition that is not being treated at BOP, which would support a finding of extraordinary and compelling circumstances under § 1B1.13(b)(1)(C). In support of this, Defendant argues that he received delayed heart monitoring and a colonoscopy that was ordered by doctors. The records, however, show that he did receive the monitoring and colonoscopy and there is no evidence that any delay

resulted in any medical harm. Further, while Defendant is entitled to medical treatment, the medical providers are able to determine when that treatment occurs within their medical judgment. Finally, Defendant argues that BOP has failed to treat his basal and squamous cell carcinoma. Reviewing the records, it appears that Defendant has had numerous dermatology visits and that his condition is being treated. Defendant has not shown that "specialized medical care [] is not being provided." U.S.S.G. § 1B1.13(b)(1)(C).

Finally, Defendant argues that his age (72), length of custody, and serious deterioration in physical health because of the aging process is sufficient to establish extraordinary and compelling circumstances. While Defendant's age and length of custody meet the requirements under the policy statement, Defendant has not established a serious deterioration of health due to the aging process. Defendant's medical issues are being treated by the BOP and the records show that Defendant is relatively healthy for his age. The fact that Defendant needs treatment for conditions that can occur with age does not support a consideration for compassionate release given the comprehensive record showing treatment and Defendant's health. Therefore, the court finds that he has not shown extraordinary and compelling circumstances under both the first and second elements.

The court also notes that it would deny Defendant's motion under the sentencing factors for the reasons set forth in the court's prior order even after considering Defendant's current health issues. (Doc. 860 at 8–9.)

## IV. Conclusion

Defendant's amended motion to reduce sentence (Doc. 874) is DENIED. Defendant's motion to reduce sentence (Doc. 873) is DENIED AS MOOT. The parties' motions to file certain

exhibits under seal (Docs. 872, 876, 878, 882) is GRANTED. To the extent any document is not contained in the record, the parties are to file the sealed documents on the record forthwith.

IT IS SO ORDERED. Dated this 5th day of November, 2026.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE